M'BROOM, et al. *vs.* THE GOVERNOR, &c.

1. It is a general rule, in relation to all agents who collect money under a lawful authority, that until a demand or request is made for the same, they are not liable to a suit.

2. So, a sheriff, who is an agent appointed by law to collect money on execution, may lawfully hold it, until a demand or request is made by one entitled to receive it. He is not bound to search out the plaintiff, and tender him the money collected, or pay it into court.

3. Therefore,—In an action or motion against a sheriff or his securities, to recover moneys collected by him, and which it is alleged he has failed to pay over, an averment that a demand had been made before action brought, is essential, and a defect in this behalf will vitiate the declaration.

4. The statute of non-claim presents a complete bar to an action against an executor or administrator, seeking to recover a claim against the estate of the testator or intestate, not presented within eighteen months after the cause of action has accrued, or within the same time after the grant of letters testamentary or of administration ; and *semble* a creditor or any other person interested in the distribution, has an equal right with the executor or administrator, to insist on a plea to that effect.

5. As a general rule, in all cases of joint contract, the extinction of the liability of the principal debtor, is also the extinction of the liability of the surety: but an exception obtains when the extinction is caused by operation of law:

6. Therefore,—in an action, seeking to recover of the sureties to a sheriff's bond, moneys, which it is alleged were collected by the sheriff, since deceased, and which he failed, in his life-

time, to pay over, and a demand for which was not presented to his administrator within eighteen months after the grant of letters of administration, a plea setting forth the death of the sheriff, the administration, and the non-presentation by the creditor within the eighteen months, was held to contain no legal defence to the action, and that a demurrer to it was properly sustained.

7. Mere passiveness, also, on the part of a creditor, does not discharge a surety to a sheriff's bond, as the creditor is under no legal obligation to be active, except at the request of the surety.

Debt on bond. This was an action of debt, founded upon a writing obligatory, made by William McBroom, as sheriff of the county of Madison, in the State of Alabama, in his life-time, (who has since died, and whose present administrators *de bonis non,* Richard B. Purdom and Thomas McBroom, were not sued,) and the defendants, on the fourth day of November, eighteen hundred and twenty-two,—by which said writing obligatory, the said William McBroom, and the said defendants, acknowledged themselves to be bound to Israel Pickens, Governor of the State of Alabama, and his successors in office, in the penal sum of ten thousand dollars, for the payment of which they bound themselves, their heirs, executors and administrators, jointly and severally, by the said writing obligatory, with condition annexed, that if the said William McBroom, who had been duly elected sheriff of said county of Madison, should well, diligently and faithfully perform all the duties incumbent on him, as required by law, in his said office of sheriff of the said county—the said obligation was to be void ; which condition of the said writing obligatory, the said William McBroom failed to perform, in this, that he, as sheriff of the said county, by his deputy, John F. Mills, collected of Allen J. Davie, a

large sum of money, amounting to the sum of nine hundred and twenty-four dollars and four cents, debt, damages and interest, (besides costs,) on the fifth day of January, eighteen hundred and twenty-four, as by return on a writ of *venditioni exponas*, in favor of Joseph Littlejohn and Hutchins G. Burton, (guardians of W. W. Jones,) against one Allen J. Davie, which issued from the office of the clerk of the Circuit court of the said county of Madison, and which bore date on the sixteenth day of December, eighteen hundred and twenty-three, for five hundred and four dollars, debt, two hundred and twenty-five dollars and fifty cents, damages, besides sixteen dollars and seventy-five cents, costs, on a judgment of said court, of the sixth day of September, eighteen hundred and twenty,—which said sum, &c. the said William Mc-Broom had failed to pay over to the said Joseph Littlejohn and Hutchins G. Burton, (guardians of W. W. Jones,) and was then due and unpaid. The writ was issued on the fourteenth day of March, eighteen hundred and thirty-four, and on the eighteenth day of October, eighteen hundred and thirty-six, the plaintiff obtained leave to file his declaration, in which he alleged :

That theretofore, to wit, on the fourth day of November, eighteen hundred and twenty-two, the said defendants and one William McBroom, and one Lewis Moore, who were not sued in the action, by their writing obligatory, signed with their names, sealed with their seals, and to the court there shewn—the date whereof, was the day and year last aforesaid—acknowledged themselves to be bound to Israel Pickens, governor of the State of Alabama, and his successors in office, in the penal sum of ten thousand dollars, for the payment of which, they bound themselves, their heirs, executors and administrators, jointly and severally—to be paid to the said Israel Pickens, governor, as aforesaid, and his successors in office,

when they should be thereunto afterwards required. Which said writing obligatory had the condition annexed, that if the said William M'Broom, who had been duly elected sheriff of the county of Madison, should well, diligently, and faithfully perform all the duties incumbent on him, as required by law, in his said office of sheriff of said county—then said obligation to be void; otherwise to be and remain in full force. And the plaintiffs in fact, said, that William McBroom, sheriff, as aforesaid, entered on the duties of said office as sheriff of said county of Madison: to wit, on the day and year last aforesaid, and that he did not well and diligently, and faithfully perform all the duties incumbent on him, as required by law, in his said office of sheriff of said county ; but had failed to perform the same, in this, that the said William McBroom, sheriff as aforesaid, by his deputy, John F. Mills, on the fifth day of January, in the year eighteen hundred and twenty-four, in said county, had collected, by virtue of a writ of *venditioni exponas*, which had, before that time, to wit, on the sixteenth day of December, eighteen hundred and twenty-three, came to his, said M'Broom's hands, as sheriff, and which issued from the office of the clerk of the Circuit court of the said county of Madison, on the day and year last aforesaid, in favor of said Littlejohn and Burton, as guardians of said W. W. Jones, against the effects of one Allen J. Davie, a large sum of money, to wit, the sum of nine hundred and twenty-four dollars and four cents, debt, damages, and interest, besides costs ;—said writ having issued on a judgment in favor of said Littlejohn and Burton, guardians, as aforesaid, for five hundred and four dollars, debt, two hundred and twenty-five dollars and fifty cents damages, besides sixteen dollars and seventy-five cents, costs,—said judgment had been obtained on the sixth day of September, eighteen hundred and twenty; in the Circuit court of said county ; which said sum of money, he, the said

William McBroom, sheriff, as aforesaid, wholly failed and refused to pay over to the said Littlejohn and Burton, guardians, as aforesaid; and which said sum, said McBroom and said defendants, had hitherto, wholly failed and refused to pay to said Littlejohn and Burton, guardians, as aforesaid.

And the plaintiff averred that John Gayle had succeeded the said Israel Pickens, as governor of the State of Alabama. By means of all which premises, the plaintiff averred, that an action had accrued to him, to demand and have of defendants, the said sum of ten thousand dollars, as above demanded. Yet said defendants had not, (nor had said William McBroom, or said Lewis Moore,) paid said plaintiff said sum of ten thousand dollars, above demanded, or any part of the same; but the same to pay, the plaintiff had theretofore wholly failed and refused, and still did refuse—to the damage of the plaintiffs, three thousand dollars,—and for that sum he sued, &c.

And on the third Monday in October, in the year eighteen hundred and thirty-six, the plaintiff came and suggested the death of Robert Walton, since the issuance of the writ in this cause; and it was order-by the court, that the same be entered of record, and abate as to him, &c.

And afterwards, to wit, on the nineteenth day of April, in the year eighteen hundred and thirty-seven, the defendants came and defended the wrong and injury, when, &c., and said that the said plaintiff ought not to have and maintain his said action against them, because, they said, that they, the said defendants, in and by the said bond, mentioned in the said declaration, were sureties of the said William McBroom, as sheriff of the county of Madison: That since the said cause of action accrued, which was set forth in the said declaration, to wit, on the first day of January, eighteen hundred and twenty-eight, in the said county, the said William McBroom departed

this life.    That afterwards, to wit, on the twenty-sixth day of May, eighteen hundred and twenty-eight, administration of all and singular, the goods and chattels, rights and credits, that were of the said William McBroom, at the time of his death, who died intestate, had been, by the judge of the County court of said county, in due form of law, granted to John F. Mills and Charles McClellen, which would fully appear by the letters of administration as aforesaid, granted by the said judge of the County court of Madison, and issued by the clerk of that court, bearing date the day and year last aforesaid, and which said letters were then shewn to the court there.    That afterwards, to wit, on the eighth day of August, eighteen hundred and twenty-eight, the said administrators published in the " Southern Advocate," which was then, a newspaper, printed in the county and State aforesaid, a notice, requiring all persons having claims against the said William McBroom, deceased, to exhibit the same to the said administrators, within the time limited by law, or the same would be barred; which said notice also stated the time of granting said letters of administration, as aforesaid : and the same notice was published in said newspaper, continuously, for six weeks successively, once a week, during each of the six weeks, immediately succeeding the commencement of said publication as aforesaid.

And said defendants said, that the said supposed claim, which was set forth in the said plaintiff's declaration, and sought to be recovered by this suit, was not presented to said administrators, nor to either of them, within eighteen months after the same accrued, or within eighteen months after said letters of administration were granted to said administrators, or within eighteen months after the publication aforesaid ;— and all this the said defendants were ready to verify : wherefore they prayed judgment, if the said plaintiff ought to have or maintain his aforesaid action, &c.

And for further plea in that behalf, said defendants said, the plaintiff his said action ought not to have or maintain, because they said that they were, by the bond mentioned in the plaintiff's declaration, the sureties of said William McBroom, as sheriff of said county; that since the cause of action, for which the suit was brought, accrued, to-wit, on the first day of January, eighteen hundred and twenty-eight, said William McBroom departed this life: that afterwards, to-wit, on the twenty-sixth day of May, eighteen hundred and twenty-eight, in said county, by the judge of the county court of said county, said Mills and McClellen, in due form of law, were appointed administrators of the goods and chattels, rights and credits, of said William McBroom, deceased, which would fully appear by the letters of administration of the last mentioned date, granted by said judge, and issued by the clerk of said county court, to said Mills and McClellen, which letters were then shewn to the court: that afterwards, to-wit, on the —— day of ———, and within two months next after the granting of the said letters of administration, said administrators published in the Southern Advocate, which was a newspaper printed in the county and state aforesaid, a notice requiring all persons having claims against said William McBroom, deceased, to exhibit the same to said administrators within the time limited by law, or the same would be barred; which said notice stated the time when said letters of administration were granted as aforesaid, and said notice was published in said newspaper for six weeks, once a week during each of the six weeks, immediately succeeding the commencement of said publication as aforesaid. And said defendants said, that the said claim which was set forth in the plaintiff's declaration, and by the suit sought to he recovered, was not presented to said administrators, or either of them, within eighteen months after said letters of administration were granted to said ad-

ministrators, and this the defendants were ready to verify. ' Wherefore, they prayed judgment, if said plaintiff ought to have or maintain his aforesaid action thereof, &c.

To these pleas, plaintiff demurred, and defendants joined in demurrer.

Defendants also plead performance of the conditions of the bond, and the statute of limitations; to which pleas, replications were filed, and issues taken, &c.

And on the nineteenth day of April, eighteen hundred and thirty-seven, the plaintiff came, and discontinued his suit as to Robert Walton, on whom process was executed, and who had since departed this life: and thereupon the parties came, and also came a jury of good and lawful men, who being elected, tried and sworn, well and truly to try the issues joined, upon their oaths, said they found for the plaintiff; and assessed his damages, by reason of the premises, to the sum of fourteen hundred and nineteen dollars and forty-two cents. It was thereupon considered by the court, that the plaintiff recover against the defendants, William Derrick and Stephen McBroom, the sum of ten thousand dollars, the penalty of the bond in the declaration specified, besides the costs in that behalf expended, &c., to be discharged on the payment of the said sum of fourteen hundred and nineteen dollars and forty-two cents, the damages aforesaid, in form aforesaid, assessed.

Pending the trial of the cause, defendants excepted to the opinion of the court, and tendered their bill of exceptions, which they prayed might be signed, sealed and ordered to be made a part of the record in said cause, which was accordingly done, &c.

The bill stated, that on the trial of the cause, the plaintiff offered no proof to shew that a demand or application had ever been made to McBroom for the money in the declaration charged to have been re-

ceived by him; and that upon this, the defendants asked the court to charge the jury, that no action would lie against the securities of the sheriff, for moneys collected by him, as such, until after a demand for the same had been made; which instructions the court refused to give. To which opinion the defendants excepted, and tendered their bill, &c.

On the trial of the case in this court, it was admitted by the parties, that the judgment on the demurrer to the two first pleas, sustained the demurrer, and that it should be considered by the Supreme court, as if the same judgment was shewn in the transcript.

And the plaintiffs in error assigned for error, that in the proceedings and judgment below, the court erred:

1. In sustaining the demurrer of defendant in error, to the two first pleas of plaintiffs in error.

2. In refusing to give the instructions asked for, as shewn by the bill of exceptions—for which they prayed that said judgment might be reversed, &c.

And defendant denied that there was error in the record.

*Hopkins & Parsons*, for plaintiffs in error.
*McClung*, contra.

GOLDTHWAITE, J.—This action is debt—instituted in the Circuit court of Madison, on a sheriff's bond, signed by William McBroom, as principal, and the plaintiffs in error, as his sureties.

The breach assigned, is the non-payment of money, collected on a *venditioni exponas*.

The defendants pleaded four several pleas—the two first of which are substantially the same; and shew the death of William McBroom, in January, one thousand eight hundred and twenty-eight—administration on his estate in May, one thousand eight hundred and twenty-eight, and publication thereof as re-

quired by law; and that the claim was not presented to McBroom's administrators, within eighteen months after the grant of administration, or within eighteen months after the cause of action accrued.   To these pleas there was a demurrer, which was sustained by the Circuit court.   The third plea—conditions performed; and the fourth, the statute of limitations: on . these, replications and issues to the country; on which a trial was had, and a verdict found in favor the plaintiff.

At the trial, no evidence being offered by the plaintiff, to shew any demand of the money collected, the court was requested to instruct the jury, that no action could be maintained, without shewing a demand—which request was refused, and the defendants excepted.   To reverse the judgment rendered against them, the plaintiffs in error have brought the case into this court; and assign, that the Circuit court erred, in sustaining the demurrer to the two pleas, and in refusing to give the instructions by them requested.

It is insisted, that all claims against the estate of any deceased person, not presented to the executor or administrator within eighteen months after the cause of action has accrued, or within the same period after the grant of letters testamentary, or of administration, are extinguished, and forever barred, under the statute of non-claim;* and hence it is inferred, that as this demand was extinguished as to McBroom's estate, it can not be enforced against the plaintiffs, who are sureties.

The statute was certainly intended to present a complete bar, under which the executor or administrator might rest, with security, and proceed to distribute the estate, according to the directions of the will, or under the statue of distribution, and the cre-

---

*Aikin's Digest, 153.

ditor, or any other person interested in the distribu-
tion, would have an equal right with the executor or
administrator, to insist on the exclusion of all de-
mands, not presented within the period limited.   So
far, then, as the statute referred to, has a bearing on
this case, it may be considered as enacting a com-
plete bar; and if the creditor was now seeking his
remedy against the estate, a similar plea to those
pleaded in this case, would interpose a complete de-
fence.   Such has been the construction given to simi-
lar statutes, in other States.*

Admitting this, as the true construction, which
must be given to our statute of non-claim, we will
proceed to examine whether the consequences flow
from this construction, which have been insisted on,
by the plaintiffs in error.   The general rule, without
doubt, is, that the extinction of the liability of the
principal debtor, is also, the extinction of the liability
of the surety ; but an exception obtains, when this
extinction is caused by operation of law.   The same
rule attaches to all cases of joint contracts.   The ex-
tinction of the contract, as to one of several joint
contractors, is an extinction as to all, but the same
exception must prevail.

In the case under consideration no act is alleged to
have been done by the creditor, which has affected
the subject matter of the contract, or which has chang-
ed the situation of the parties.   He is charged, alone,
with having been passive, and with an act of omis-
sion,—by reason of which, it is said, his right is ex-
tinguished, as to all of the co-obligors.   We look in
vain to the terms of the contract, for a sanction to this
argument,—and if supported at all, it must be from
the analogies of the law.

It is said, that the surety has the right to indemni-

---

*6 Conn. Rep.28 ; 15 Mass. Rep. 6: 16 ib. 179 ; 3 New H. Rep. 491;
13 Mass. Rep. 201 ; 5 Pick. 140.

ty against his principal, for any injury which he may sustain, from the contract of suretyship, and that the remedy is gone, by the remissness of the creditor. If this be so, it must arise from one of two causes : either that the surety, when he pays money on the contract, has no remedy against the estate of his principal, or because that estate is not able to indemnify him. If these sureties should now pay this bond, their right or cause of action against the estate of their principal, could not be said to have accrued previous to the payment—until then, it was not a debt due from the estate to them. ' The contract of McBroom, by this bond, is of a two-fold character.— With the creditor he engages to perform the duties of his office, and with his sureties, by implication, that he will indemnify them, against any loss which they may sustain on his account. Both engagements are equally obligatory, but they can not accrue at the same period—and that of the surety, not until the time arrives when he shall have paid money, for his liability to the creditor. From this moment his cause of action accrues, and he has eighteen months within which to enforce it against the estate of his debtor, and it is within the very terms of the statute.

If, in consequence of the delay of the creditor to pursue his remedy against the estate of the principal debtor, a loss has accrued, it is not perceived how this circumstance, of itself, should destroy the obligation of the surety, any more than in any other case, where loss is the consequence of the delay of the creditor. No case has, or, as it is believed, can, be shewn, in which it has been held, that mere passiveness will discharge the surety.

There is no legal obligation to be active, except at the request of the surety, (*Eyer vs Everett,**) and the

---

*2 Russ. 381.

circumstance that the surety can not, in cases of a suretyship of this nature, know when a default has taken place, ought not to place the creditor in a worse situation, than if the contract was absolute, and so definite, that the surety could, at any time, call on the principal to proceed. The law gives to the creditor the right of security; and it was for the surety to consider the uncertain nature of his responsibilities, when he entered into the engagement. He can not now, be permitted to say that he ought to occupy a more favorable position, than he would have done, if his liability was of a more direct and certain nature.

It is supposed that the bankrupt and insolvent laws of Great Britain, must present questions analogous to the one which arises in this case, in as much as these laws provide for the extinction of the debt due from the bankrupt or insolvent debtor. Accordingly, we find, on reference to many cases, the very principles maintained, which we have declared. *Soutten vs Soutten;* Goddard vs Vanderheyden;† Hewes vs Mott;‡ Newington vs Keyes;§ Wood vs Dodgson;‖ Moody vs King;¶ Dally vs Wolferston.***

It seems to be admitted, by the argument, that this discharge of the surety, springs out of the statute of non-claim, if at all, and did not exist at common law; and yet, by the common law, in case of a partial insolvency, the omission of the creditor to proceed against the estate of the principal debtor, would have worked an entire loss to the sureties, as the whole estate might have been exhausted on other liabilities; and when the surety came to enforce his claim, he might be met with the plea, of fully administered.— The case of *Cope vs Smith,*†† is conclusive to shew,

---

*1 D. & R. 521; 5 B. & A. 852.
†3 Wilson, 262.
‡6 Taunt. 329.
§4 B. & A. 493.

‖2 M. & S. 195.
¶4 D. & R. 30.—2 B. & C. 558.
**3 Ib. 269,
††8 Serg. & Raul. 110.

that an omission to sue, would be no defence at common law, or under the statute of Pennsylvania, which does not extinguish the demand, but merely postpones the creditor not presenting his demand.

The case of *The Nashville Bank vs Campbell et al,* is only distinguishable from this case, by being founded on a direct liability to pay money; and the Supreme court of Tennessee held a similar plea to be no answer to the declaration.

But the principle does not rest on authority alone—it is supported by the plainest principles of equity.—If the estate of McBroom, the principal debtor, was either wholly or partially insolvent, it could neither be just or equitable, that the creditor should lose the whole of his demand, when, under no circumstances, could he have recovered it from the estate of the deceased debtor.

In such a case, to sustain the pleas, would operate as the infliction of a penalty,—and a reward would be given to the sureties, for the omission of the creditor, to prosecute his claim.

Even in cases where a creditor has two funds, to which he might have resorted, to secure his debt, one of which could not have been reached by the debtor, or by his surety, and this one has been lost, by the wilful omission of the creditor to proceed against it; yet these circumstances do not constitute a defence at law. Thus, in the case of *Folliot vs Ogden,*† the facts were, that the defendant had been attainted by the State of N. Jersey, his estate and effects confiscated, and vested in the people of that State, and, in the first place made liable for his debts, and out of which was raised a fund more than sufficient to pay them—to which fund, the plaintiff, who was a citizen of New Jersey, might and ought to have resorted. It was

---

*MS. 7 Yerger. †1 Hen. Black. 123.

held, by Lord *Loughborough*, and the court of Common Pleas, that the only relief of the defendant was in Equity.

If it is within the power of the plaintiffs in error to shew, that the creditor in this case, might and ought to have resorted, in the first instance, to the fund created by the deceased debtor's estate; and that, by reason of his culpable omission so to do, a loss will be sustained by them, if payment is enforced against them, on the bond,—they might, perhaps, have relief in a court of equity, to the extent of the injury, according to the principles laid down in the case of *Wright vs Nutt*.* This case, in the facts, is similar to the case of *Folliot vs Ogden*, but in the court of Chancery, which sustained a bill for relief, after judgment in a court of law, on the ground that the creditor could, and the debtor could not, have resorted to the particular fund. How far the principles established by these cases, may entitle the plaintiffs in error to relief, on a proper case, is a question which need not now be examined.

Our conclusion is, that the pleas pleaded, present no legal defence to this action; and if the declaration was sufficient in law, there would have been no error in sustaining the demurrer to them.

But, on looking into the declaration, we are satisfied that it also is vicious. There is no allegation, that the money collected by McBroom was ever demanded from him, or from his administrators, before the institution of this suit. This Court has already decided, *(Barton vs Peck,†)* in the case of a motion against a sheriff and his sureties, that such an averment is essential,—and we consider it equally so, in this case.

The sheriff is the agent, appointed by law, to collect the money on executions; but he is not bound to

---

* 1 Hen. Black. 136.          † 1 Stewart & Porter, 486.

search out the plaintiff, and tender to him the money collected. Neither is he required by law, to pay it into court. He holds it under a lawful authority, until a demand or request is made by one entitled to receive it. We are aware that the English rule is at variance with the views as now expressed.—*Dale vs. Burch;*[*] *Swain vs Morland;*[†] *Jefferies vs Sheppard.*[‡]— But in the case of *Wilder vs Bailey,*[§] the rule adopted by this court, is laid down with reference to a statute similar to our own.

The general rule, in relation to all agents who collect money under a lawful authority, is, that until a demand or request made, they are not liable to a suit. See *Armstrong vs Smith;*[||] *Judah vs Dyott;*[¶] *Topham vs Braddock;*[**] *Taylor vs Bates;*[††] *Rathbone v Ingalls;*[‡‡] *Williams vs Storrs.*[§§]

These views shew that the exception taken before the jury, for the want of evidence of demand, was unnecessary; and as no averment was made, it was unnecessary to prove the fact: but, as the averment was omitted, in the declaration, the demurrer to the pleas should have been overruled, and the declaration pronounced bad.

The judgment rendered, must be reversed, and the cause remanded; and the pleadings may be amended in the court below.

---

[*] 3 Camp. 347.
[†] 1 B. & B. 370.
[‡] 3 B. & A. 696.
[§] 3 Mass. 294.
[||] 3 Black. In. Rep. 251.

[¶] 3 Black. In. Rep. 324.
[**] 1 Taunt. 572.
[††] 5 Cowen. 376.
[‡‡] 7 Wend. 320
[§§] 6 Johns. Ch. Rep. 353.