WILSON VS. TEBBETTS.

1. PRINCIPAL AND SURETY: *Effect of the discharge of one surety by opera-tion of law.*

The discharge of one of several sureties by the failure of the creditor to sue within thirty days after notice under the statute is personal to him, and will not affect the liability of his co-sureties.

2. — *Effect of indemnity on the rights of surety.*

Where the principal debtor, in order to indemnify his sureties against payment of the debt, executes a deed of trust on property sufficient in value for that purpose, none of the sureties, whether named in the deed or not, can require the creditor to sue on thirty days' notice under the statute.

APPEAL from *Pulaski* Circuit Court.

Hon. JOHN WHYTOCK, Circuit Judge.

*Clark & Williams*, for appellant.

*U. M. Rose, contra.*

WALKER, J. Wilson loaned to Van Horn $3,000, the money of his ward, Wallace, and took Van Horn's note for the payment, with Gregg, Tebbetts and nine others as sureties. The note was dated December 5, 1857, due one year after. Soon after the note had been executed, at the instance of the sureties and to indemnify them from loss by reason of their suretyship, Van Horn conveyed by deed of trust real estate ample in

value to pay the debt, to a trustee, with power to sell the property after twenty days' notice for cash, and to pay the debt, should Van Horn fail to pay the same when due. A short time after the note became due, and without sale under the deed of trust, Gregg, one of the sureties, gave Wilson notice to sue within thirty days. Wilson failed to bring suit as required by statute. No steps were taken by the sureties to have the property sold under the deed of trust for some eight years. In the meantime, the buildings on the lots, which constituted the chief value of the property, were destroyed by fire. The property, when sold, brought $300, which sum was credited on the note.

Wilson brought suit against Tebbetts, who pleaded the discharge of Gregg in bar. The case was submitted to the court sitting as a jury upon the above agreed state of facts.

The plaintiff asked the court to declare the law applicable to the state of case to be:

1. That a notice to sue given by one of the joint sureties to the note sued on, and the discharge of such surety by reason of a failure to comply with such notice, does not discharge the other sureties to the note.

2. That where sureties to a note or bond procure a mortgage or deed of trust to be executed by the principal upon property ample in value to pay the debt, indemnifying such sureties against loss by reason of such suretyship they cannot, while such deed of trust remains in force, discharge themselves from their obligation as sureties by giving notice to the creditor to sue.

The court refused to declare such to be the law, and rendered judgment for the defendant, from which plaintiff appealed.

Prior to the statute, Gould's Dig., ch. 157, mere delay or neglect on the part of the creditor to sue would not discharge

the surety from liability to pay, even though by such delay the principal debtor should become insolvent. The appropriate remedy of the surety was in equity, where he might, by paying the debt, or under strong equitable grounds, become so far subrogated to the rights of the creditor as to take his recourse against the principal for his own protection.

The statute, ch. 157, sec. 1, provides that "any person bound as security for another in any bond, bill or note for the payment of money, or the delivery of property, may at any time after such action has accrued thereon, by notice in writing, require the person having such right of action forthwith to commence suit against the principal debtor and the other party liable. Sec. 2. If such suit is not commenced within thirty days after service of notice, etc., such surety shall be exonerated from liability to the person notified."

The suit in this instance is at law, but whether at law or in equity, the rights of the sureties are equitable and are to be determined on equitable principles. *Hempstead v. Watkins*, 6 Ark., 317.

In all that regards the creditor, both the principal and the surety are primarily and equitably bound to fulfill the contract. But as between themselves, the whole duty of performance rests, in contemplation of equity, on the principal.

The office of the statute is to impose a duty on the creditor to come to the relief of the surety in case of apprehended danger of liability, by reason of the inability of the principal creditor to pay. It confers a privilege upon the surety to be thus released from his suretyship, and as a consequence of neglect of the creditor to sue, the loss of his remedy against such surety. We have repeatedly held that the surety who gives such notice is discharged from the payment of the debt, unless suit is brought within the time prescribed by the statute.

The question now to be considered is, Does the discharge of

one of the sureties who gives the required notice, also dis-
charge those who have not given notice ?

The counsel for Tebbetts contend that such is the effect of
the discharge of one surety who has given notice, upon the
liabilities of the co-sureties who failed to do so, and to sus-
tain them in this position, have cited several adjudicated cases.
That most strongly in point, and which would seem most
fully to sustain them, is the case of *Wright, Adm'r, v. Stockton,*
5 Leigh, 153.

Under a statute of Virginia, substantially like our own,
three out of four sureties gave notice to the creditor to sue ;
suit was brought upon the bond and the three were discharged
Suit was then brought against the estate of Wright, the surety
who had not given notice.

When considering the case thus presented, CARR, J., said :
" In this case the creditor was required to sue by three of
the sureties, and delayed to do so for an unreasonable time, in
consequence of which delay the three sureties who joined in
the requisition have been discharged by a judgment from all
liability. It is contended that this does not discharge the de-
fendant, because his intestate did not join in the requisition to
sue. If we take the statute literally, it would seem to require
that when there were more sureties than one, all shall join in
the requisition, for the words are : ' Where any person or per-
sons are the surety or sureties in a bond, etc., it shall be law-
ful for such surety or sureties to give notice, etc.' Yet this
construction would in a great measure defeat the remedy, as it
would put it out of the power of one, where there are many
sureties, to prevent the notice by refusing to join.

" If we look at the reason and object of the law, it would
seem that a notice to sue by a part of the sureties would be as
effectual as one given by them all * * * Again, we know
that there is a principle of the common law attaching to all

joint obligations, by which a discharge of one obligor is a discharge of all."

It is upon this construction of the statute and upon the announcement of a common law principle with regard to joint obligations, which can have no application in this case, because we have a statute which makes all contracts joint and several, that the court in that case held a notice by one surety who gave notice, to be a discharge of all.

With due respect for the conclusions which the court seemed to have reached, we think that neither the intent of the legislature nor the language of the statute sustains the court in its decision. Certainly it would not be a fair construction of a statute such as ours, which says; " Any person bound as security, etc., may by notice require suit to be commenced, etc., and that if suit is not brought, such security shall be exonerated."

Thus we see the right is given to " any surety to give notice to sue," and if suit is not brought, it discharges the surety who gives it. By the first section the right to give such notice is given to any person bound as surety, and it clearly gives the right to give notice to one or more who may feel themselves insecure by reason of the failing circumstances of the principal debtor, whilst the right to be discharged is clearly limited to such surety as has given the notice. Thus considering this decision and the course of reasoning upon which it was reached, we can give it no controling influence in the consideration of the case before us.

The *People v. Buster*, 11 Cal., 215, has also been cited by counsel for defendant as sustaining their position; and although the question in that case arose upon the effect of notice by one upon the liabilities of others who failed to give notice, the grounds upon which the court held that the discharge of one surety upon notice was also a discharge for his cosureties were, that the obligation was joint, not joint and several.

In the case of *Letcher, Adm'r, v. Yantis,* 3 Dana, 160, one surety sued another surety for the recovery of one-half of the sum which he as surety had been compelled to pay to the creditor. The intestate of defendant had given notice to sue under the provisions of a statute much like our own. The surety who gave the notice was held to be discharged from contributing to the payment of money which the cosurety, who gave no notice, had paid. This case but accords with our former decisions as to the discharge of the party giving the notice, and so far from being an authority in support of the defense, is fully in support of our construction of the statute in this case. Chief Justice Robinson said: "If Letcher was exonerated from all liability to the obligee, we cannot perceive any reason for presuming that he was responsible to Yantis, who elected to remain bound for the debt;" and so we may with like propriety say, if Gregg is exonerated by reason of his notice to Wilson to sue, no good reason is perceived why Tebbetts, who had an equal right to give the notice that Gregg had, but failed to do so—elected to remain bound (for that is the legal effect of his act), should also be discharged.

We have examined with some care the other authorities referred to by counsel, and find that they have no such application to the question at issue as to require particular notice.

Giving to the numerous authorities cited their full force, and that they clearly show that a change in the terms of the contract without the consent of the obligors is a discharge to all of them, still it is equally clear that this change or alteration must be effected by the act of the obligee or creditor, and not by mere operation of law; as for instance, where one of several obligors is discharged in bankruptcy, or where under the statute the creditor is, after notice, required to present his claim for allowance against an estate within a given time and

fails to do so ; in these and all like cases the discharge is said to be by operation of law.

Thus in the case of *McBroom et al. v. The Governor et al.*, 6 Porter, 32, the facts were that McBroom executed a bond with security, to the state of Alabama, for the discharge of his official duties. McBroom died ; administration was had upon his estate, and notice given to all persons who held claims against said estate to present them within a given time or they would be barred. The obligee failed to present the claim within the time prescribed by the statute. Suit was brought against the securities, and their defense was, that as the obligee had neglected to present the claim within the time prescribed by the statute, the right of action was barred by the statute of non-claim as to the principal, and because the creditor had by his neglect discharged the estate of the principal from liability, they, as sureties, were also discharged.

GOLTHWAIT, J., upon this state of case, said : " The general rule without doubt is, that the extinction of the liability of the principal debtor is also an extinction of the liability of the surety. But an exception obtains when the extinction is caused by operation of law. \* \* \* In the case under consideration, no act is alleged to have been done by the creditor which has affected the subject matter of the contract, or which has changed the situation of the parties ; he is charged alone with having been passive, and with an omission by reason of which it is said this right is extinguished as to all the obligors. \* \* \* If, in consequence of the delay of the creditor to pursue his remedy against the estate of the principal debtor, a loss has accrued, it is not perceived how this circumstance, of itself, should destroy the obligation of the surety any more than in any other case where loss is the consequence of delay of the creditor."

In *Routon's Adm'r v. Lacy*, 17 Mo., 399, the facts were that

Todd as principal, and Hall and Lacy as sureties, executed their note to Routon. Hall, one of the sureties, died, and the administrator of his estate served notice on Routon, the creditor, requiring him to bring suit under a statute similar in its provisions to our own. Routon failed to sue, and died. Todd, the principal, also died, and his estate proved to be insolvent. Lacy, the surviving surety, who failed to give notice to sue, was sued upon the note and pleaded the discharge of his co-surety Hall, as a discharge of himself also.

In regard to which, Scott, J., who delivered the opinion of the court, said : " The only question in the case which is attended with any difficulty is, whether one surety can avail himself of a notice given by his co-surety, or whether if the creditor, after a notice from one surety, neglects to sue as required by law, he will lose his recourse against all of the sureties where there are more than one. There may be cases where such a construction of the statute would be manifestly unjust. If the co-surety should be consulted, and not wishing to be sued, should refuse to join in the notice, he would scarcely be entitled to any benefit from it. On the other hand, to maintain that the failure of the principal to sue when required could not be taken advantage of so as prevent his becoming liable for the entire debt, in cases where he had no notice, would operate to increase his responsibility and vary his undertaking without his knowledge or consent. * * * The surety must look after his principal. He knows that he is bound. He had a right to give the notice to sue; from his neglect to do so, the creditor may presume that he is content to remain bound. If the liability is not increased; if his contract is not affected to his prejudice by any act of the creditor, he has no cause to complain of the failure-to bring suit. While the law will not permit the creditor to injure a surety by his conduct or neglect, yet his obligation will not be so re-

laxed as to make it more a snare than the guaranty for the payment of a debt."

As this question is for the first time brought before us for consideration, we have indulged in making unusually full extracts from the several decisions which have been cited by the counsel on both sides, as well as others to which we have had access, and the result has led to the conclusion that, under a fair and just construction of our statute, any one or more of the sureties bound in a bond, bill or note with their principal, may at any time after the debt becomes due, either jointly or severally, give to the obligee or creditor notice, as prescribed in the 1st sec. of ch. 157, Gould's Dig. ; and that the discharge provided for in the 2d sec. of that chapter is only a release to the party or parties who give such notice, and that the court erred in refusing to give the first instruction asked by plaintiff.

The question presented in the second instruction or ruling of the court, asked by plaintiff and refused by the court, distinctly presents the question as to whether the surety who takes from his principal debtor money or property, whether by pledge, mortgage, or by deed of trust, sufficient in value to indemnify him against loss by reason of his suretyship, and whilst the property or estate so remains in his hands, can resort to the statute notice to compel the creditor to proceed against the principal debtor.

In order to a proper understanding of the question, it must be kept in mind that the right to redress, as between the principal and surety, is strictly equitable, and is to be determined upon principles of equity, whether proceeded upon in a court of law or equity. The liability of a surety, although direct as between himself and creditor, is contingent as between himself and his principal ; he is allowed to interpose and hasten the collection of the debt only upon the ground

that delay is hazardous to his rights. Although bound for its payment, it is not properly his debt, and where the principal debtor places money or conveys property of ample value to satisfy and pay the debt, there remains no equitable ground upon which a claim to hasten the collection rests.

From the time the property or money passes into the hands of the sureties, the relations between the sureties and debtor change, in so far that they stand in the attitude of principal debtors. We think that the following adjudicated cases fully sustain us in this conclusion.

In the case of *Chilton & Price v. Robbins, Paynter, etc.,* 4 Ala., 223, the creditor gave to his principal debtor time for payment, but without the knowledge or consent of the sureties. The sureties had obtained a deed of trust on the property of their principal to secure them from loss by reason of their suretyship. ORMAND, J., who delivered the opinion of the court, said: " The taking by the sureties of a deed of trust from the principal debtor to secure them against liability, and ample for that purpose is, in effect, an appropriation of the effects of the principal to the payment of his debt, and they will not therefore be permitted to urge that they are not responsible." The case of *Moore v. Paine,* 12 Wend., 123, is even stronger. There the principal debtor was discharged with the consent of the creditor. But the sureties, being fully indemnified by the debtor, were held to be liable to the creditor. Nelson, J., said: " It is true that a release of one of two or more obligors to a bond operates as a discharge to all; but the rule is provisional, and a discharge under the insolvent law has necessarily no such effect. * * * The generally acknowledged and familiar principle is, that when the creditor deals with his debtor so as to alter the rights of the sureties, or in any way impair their legal remedies against the principal, the sureties are discharged. * * * But it is obvious that

this principle has no application to this case. The sureties received from the debtor the whole amount to become due on the bond in question, and after that as between him and them, they were the principals and owed the debt. The discharge of Fine, the principal, could in no possible way interfere with their rights or liabilities, so long as they held in their hands a complete indemnity against the bond, and he is not accountable to them if they are obliged to pay."

In the case before us, Van Horn's sureties had taken a deed of trust on property amply sufficient to pay the debt with the power to sell in twenty days. Such was the state of case when Gregg gave notice to Wilson to sue in thirty days. The statute was not intended to be used to oppress the debtor; it was intended as a means of hastening the creditor in case the surety should be liable to loss by the insolvency of his principal. It appears from the evidence that this property remained for about eight years in the hands of the sureties, and near four years before it was rendered comparatively valueless by fire.

As a matter of public history we know that, for a part of that time, no sale could be effected on account of civil war.

If these sureties have equitable rights, they must arise out of their relations with Van Horn, and how far, if at all, after Van Horn had conveyed to them property of sufficient value to pay the debt, which they had permitted to remain unsold for several years, and until after the most valuable part of it had been destroyed by fire, is a question not free from doubt. Be this as it may, there was certainly no such contingent liability on the part of the sureties to loss after the deed of trust had been executed, or at the time Gregg gave notice to sue, as to entitle them to a discharge from such liability under the provisions of the statute, and it is error in the court below to refuse to declare the law as asked in the 2d proposition

of plaintiff. From the conclusions at which we have arrived, none of the sureties were discharged, nor could they, by notice to sue, properly ask for a discharge whilst they held the property of Van Horn sufficient in value to pay the debt, in their hands.

We have not overlooked the fact that Gregg's name appears to have been omitted in the deed of trust, whether by accident in copying or otherwise, we have no means of ascertaining, according to the agreed state of facts upon which the case was submitted to the court below. It is stated that Van Horn made the deed of trust at the instance of his securities on the note of Wilson, for the indemnity of such sureties from loss, and the deed requires that the money for which the trust property should sell be paid in satisfaction of the debt, so that whether his name is omitted or not, the legal effect of the deed is as much a protection to him as to the other sureties, and as it is admitted that the property conveyed was of ample value to pay the whole debt, it must of necessity be an indemnity to all of them. If we had held Gregg to be discharged, it would have been proper for us to determine whether the securities who failed to give notice to sue, and were consequently not discharged, should be held responsible for the whole debt, or only for so much of it as they would have been bound to pay had none of the sureties been discharged; but holding, as we do, that none of the sureties in this case were discharged, we will leave this question to be settled when it properly arises.

Let the judgment of the court below be reversed and the cause remanded.