[Fretwell v. McLemore.]

# Fretwell *et al. v.* McLemore *et al.*

*Bill in Equity for Account and Settlement of Administration, and for Distribution, &c.*

1. *Distribution; when equity will decree direct without administration.* — Courts of equity will dispense with administration and decree distribution direct, when the only office of administration if granted would be distribution.

2. *Distribution, bill for; parties to.* — A citizen of Georgia, possessed of assets here, died intestate in that State, several children surviving her there. Subsequently one of the children, a son, died leaving children. No administration was had upon his estate, and there were no debts against it. Administration was had here upon the first intestate's estate, but none in Georgia. There were no debts in either State. By the laws of Georgia an intestate's personalty is distributed to the widow and children in equal parts: *Held*, 1st. The distributees and the children of the deceased distributee might well join as complainants in a bill seeking an account and settlement of the administration here and a distribution. 2d. The bill was not demurrable for want of necessary parties complainant, because the administrator of the deceased distributee and the administrator of the intestate were not made parties.

3. *Ancillary administration; dignity of; when will decree distribution.* — Ancillary administration here upon the estate of a citizen of a sister State, dying there intestate, is in no proper sense dependent upon the domiciliary administration. Whether the court here should decree distribution or remit the property abroad is matter not of jurisdiction, but of sound judicial discretion, dependent upon the peculiar circumstances of each case.

4. *Section 2091 R. C., bar of; how computed.* — The statutory bar in favor of sureties of executors, administrators, and guardians, is to be computed from the judicial ascertainment of the principal's default, and not from the date of the actual misfeasance or malfeasance for which the surety is sought to be charged.

5. *Non-claim, statute of; operation upon claims of heirs and legatees.* — The claim of heirs or legatees against the estate of a surety, growing out of the misfeasance or malfeasance of his principal, whether judicially ascertained or not, is barred if not presented to the administrator of the surety within eighteen months.

6. *Same; what claims excepted from.* — The claim of "heirs or legatees claiming as such," excepted from the statute of non-claim, is the claim of title, whether derived from the statutes of descents and distribution or by will, to property of the estate — the right to the specific property in the hands of the administrator, unadministered and unconverted, as contradistinguished from a claim for a *devastavit*, or for a default creating merely the relation of debtor and creditor.

7. *Overruled case.* — The case of *Harrison* v. *Harrison* (39 Ala. 489) overruled as to points decided in 5th and 6th head-notes.

APPEAL from Chancery Court of Montgomery.

Heard before Hon. ADAM C. FELDER.

The bill in this cause was filed by the appellants against the appellees on the 17th day of February, 1873. Its allegations are that Esther Fretwell, a citizen of the State of Georgia, departed this life intestate in the year 1854, leaving assets in the State of Alabama. No administration of her estate was ever had in Georgia, and no debts existed against her either there or here. In 1854, the court of probate of Montgomery county in this State appointed one Joseph D. Hopper as administrator of the estate of said Esther, who qualified and gave bond, with the defendant McLemore, E. C. Hannon, the intestate of the defendant, Thomas E. Hannon, and others as his sureties. As such administrator said Hopper received assets

[Fretwell v. McLemore.]

amounting to about fifteen hundred dollars. He died in 1868, not having made a settlement of his administration and distribution of such assets. At his death, he was insolvent, and there has been no administration of his estate. E. C. Hannon, the intestate of the defendant Thomas E., died in 1870, and on the 13th of July of that year, administration of his estate was committed by the court of probate of Montgomery county to said Thomas. The complainants are the children and the grandchildren of said Esther, the grandchildren being children of a son, who has died since said Esther, and of whose estate there has been no administration, and against whom, it is averred, no debts exist. He was at his death a citizen of Georgia. The laws of that State distribute the personal assets of an intestate to the widow and children in equal parts. The prayer of the bill is for an account and settlement of the administration, a distribution of the assets, and that payment of the distributive shares be decreed against the defendants, and for general relief. Answers, incorporating demurrer, were filed. The causes of demurrer may be resolved into these: a misjoinder of complainants, in joining the children of the deceased son of the intestate, whose death was subsequent to hers, with the children of the intestate; the want of necessary parties complainant, — the administrator of said deceased son, and of an administrator *de bonis non* of said Esther; that the bill presents a case *primâ facie* within the bar of the statute of limitations, and if any cause exists for exempting it from the statute, such cause is not averred; and that, as to the administrator of Hannon, the statute of non-claim is a bar to the relief sought. The demurrer was sustained, and the complainants declining to amend, a decree was rendered dismissing the bill. From that decree this appeal is taken, and the ruling of the court is assigned as error.

R. M. WILLIAMSON and F. C. RANDOLPH, for appellants. — 1. The courts exempt the parties from procuring an administration where it would be a *useless* and *expensive* proceeding. The administration is *necessary* only to protect the rights of creditors; when there are *no debts* against the estate, the court of equity, with ample jurisdiction to separate the interests of all parties in the property, will proceed to exercise that jurisdiction untrammelled by difficulties which would be insuperable in a court of law. 42 Ala. 285; 25 Ala. 285; 5 Ala. 308; *Smith* v. *Dunn*, 27 Ala. 315; *Marshall* v. *Crow*, 29 Ala. 278.

2. As to principles governing distribution in a case like the present, see *Harvey* v. *Richards*, 1 Mason, 413; *Childress* v. *Bennet*, 10 Ala. 71; *Cochran* v. *Martin*, 47 Ala. 525.

[Fretwell v. McLemore.]

3. The statute of this State fixes the period of six years as a bar to any motion or action against the sureties of certain public officers, and of executors, administrators, and guardians, the time to be computed from the act done, or omitted, by their principal, *which fixes the liability of the surety.* Revised Code, §§ 2901–6. Previous to the Code in 1853, no statute of limitations in favor of sureties of an administrator, executor, or guardian, existed. There was, however, a statute in favor of the sureties of a sheriff, constable, and other public officers, fixing six years as the limitation, " next after the *commission of the act complained of.*" Clay's Digest, 329, § 90. There is a very marked distinction between the law as found in Clay's Digest and in the Code, as to the period when the statute begins to run. In the statute of 1832, it commences to run from the *commission* of the act complained of; in the Code, it is from the act done, or omitted, which *fixes the liability of the surety.* It must be supposed that in the change of phraseology adopted in 1853, the legislature intended to make such change in the law as the difference of language used would indicate. It is also true that when a statute has been readopted, on which the courts have placed a particular construction, that it shall be still so construed. The language of the present statute, when construed in the light of previous decisions, can admit of no doubt that the liability of the surety is " fixed " only by a judgment or decree of a competent court, and a failure to pay the same. In *Kyle* v. *Mays* (22 Ala. 692), it is decided to be the duty of an administrator to pay the judgment or decree as soon as it is rendered, and the creditor can sue immediately on the bond, without waiting for an execution and return *nulla bona.* Yet, in the same volume, between the same parties, page 637, the decree was not a final decree, and the court held no suit on the bond could be maintained. *Judge* v. *Looney,* 2 Stew. & Port. 70 ; *Gilbrath* v. *Manning,* 24 Ala. 418 ; *Jenkins* v. *Gray,* 16 Ala. 100 ; *S. C.* 24 Ala. 516. Now, it being held that the liability of a surety is not " *fixed* " until decree or judgment rendered against the administrator, it must be supposed that the legislature had those decisions in mind when the statute was passed. This is the only sensible construction to be given to section 2901 of the Revised Code. The trusts of a guardian and administrator are continuing, and may, as to executors and guardians, and, under our statute, as to administrators, continue for a series of years. Thus, the execution of a will, or administration of an estate ordered to be kept together, may run for ten years ; the *actual devastavit* may have been committed within the first year of the trust, undiscoverable to the parties in interest ; in such a case, it would be shocking to hold that the sureties are released four years before the time fixed

for executing the trust. Mr. Justice SAFFOLD, in *Rives* v. *Flinn* (47 Ala. 481), on this subject uses the following language: " The final settlement was an ascertainment of the extent of the administrator's liability, which *fixes the liability* of the sureties. They were then equally bound with himself to satisfy the decree."

To the same effect are the following authorities : *Ragland* v. *Calhoun*, 36 Ala. 606 ; *Yonge* v. *Ward*, 45 Ala. 474 ; *Harrison* v. *Harrison*, 39 Ala. 489; *Alston* v. *Alston*, 34 Ala. 15 ; *Rhodes* v. *Turner*, 21 Ala. 210.

The last three authorities also dispose of the question of staleness of demand. The courts of this State have adopted twenty years as the period of prescription, beyond which the court will presume execution of deeds and grants, settlements made, decrees of courts, or almost anything, to put an end to lawsuits. *High* v. *Worley*, 40 Ala. 171 ; *McArthur* v. *Canie*, 32 Ala. 75 ; *Wyatt* v. *Scott*, 33 Ala. 313.

4. But does the statute of non-claim apply to the subject-matter of this suit ? The language of the statute is : " That *all claims* against the estate of a deceased person must be presented within eighteen months after the same shall have accrued, or . . . . after grant of letters." Without regard to the exceptions contained in the next succeeding section of the Revised Code (§§ 2239, 2240), does the liability of the defendant Hannon fall within the letter or spirit of the words, " *all claims ?* " It has been settled, that it is not essential to make it necessary to present a claim that a right to sue thereon should exist. Hence a claim existing, although not due, must be presented. It has also been settled, that there must be a present liability existing to make it necessary that the same should be presented. Thus an obligation in a penalty that two of the obligors shall make a deed in a convenient time after one of them comes of age, is not such a claim until condition broken. The liability on such bond depends upon a future contingency, and does not exist as a *claim* until the contingency happens. *Pinkston* v. *Huie*, 9 Ala. 252. In *King* v. *Moseley* (5 Ala. 610), the court decide that a bond to make titles when the purchase-money is paid becomes a *claim* only from the time the purchase-money is paid. So in *Cockrill* v. *Hobson* (16 Ala. 391), the court held that the liability of an indorser on a bill of exchange did not become a present liability, embraced within the statute of non-claim, until the maturity of the bill, and the failure of the parties primarily liable to pay it. This principle would cover every case of the liability of a guarantor to be fixed by any contingency in the future. This is eminently the undertaking of a surety on an administrator's bond. *Jones* v. *Lightfoot*, 10 Ala. 17, recognizes this principle. In

the. case of *Pendleton* v. *Phelps* (4 Day, Conn. 476), it was held that a liability of a partnership after the death of one of the partners, did not become a claim against the estate of the deceased partner until after the insolvency of the surviving partner, which required presentment to the administrator. See also *Gray* v. *Palmer*, 9 Cal. 616 ; *Cole* v. *McMickle*, 30 Ind. 94 ; *Neil* v. *Cunningham*, 2 Porter, 171. *Gordon* v. *Gibbs* (3 Smed. & Mar. p. 489) was a suit upon an administrator's bond against the estate of a surety on the bond for a *devastavit* by the administrator. Neither the bond, nor any statement of the liability, was presented to the administrator of the surety. The statute of non-claim was pleaded as a bar. The statute of Mississippi is substantially the same as ours. How. & Hutch. pp. 413, 414. The court, Judge Sharkey, delivering the opinion of the court, held that the bond of administrators was not within the meaning of the statute. The court further held, as it had before held, that an administrator's bond being recorded in the same court in which the estate of the surety was administered, and being an official document, was " always in a state of presentation." See *Dickson's Adm'r* v. *Helm*, 2 Smed. & M. ; *Harrison* v. *Harrison*, 39 Ala.

WATTS & TROY and JUDGE & HOLTZCLAW, for appellee. —
1. Heirs, *as such*, cannot recover personal property which belonged to their ancestor, either at law or in equity, except through an administrator. *Bethea* v. *McCall*, 5 Ala. ; *Kelly* v. *Kelly*, 10 Ala. ; *Miller* v. *Eastman*, 11 Ala. ; *Grant* v. *Gardner*, 19 Ala. The only exception to this rule is where there are no debts and a *sole* distributee. *Vandiver* v. *Alston*, 16 Ala., and authorities there cited.

2. Mrs. Fretwell's administrator in Georgia is the only party who can sue the administrator here. The administration here is ancillary merely ; the primary administration is in Georgia, and the funds must be remitted there for distribution according to the laws of Georgia. 14 Ala. 883 ; 10 Pick. 77 ; 9 Mass. 337 ; 10 Pickering, 97 ; 14 Peters, 33.

It is clear, therefore, that Mrs. Fretwell's administrator and the administrator of her deceased son are necessary parties. The children of the dead child cannot join with the heirs of the mother. *Hall* v. *Andrews*, 17 Ala. 40 ; *Plunket* v. *Kelly*, 22 Ala. 655.

3. The bill shows that all the assets of Fretwell's estate were collected in money in July, 1854, and that he died in 1868, and this suit is brought five years and more after his death. Hopper could have been compelled to distribute after eighteen months from his qualification, there being no debts. The distributees at that time were of age. No reason is

shown why they slept so long upon their rights. Failure to distribute for an unreasonable length of time is evidence of a *conversion*, and this conversion fixes the liability of the sureties. *Stoneum* v. *Governor*, 11 Ala. 679; *Kimbro* v. *Walker*, 21 Ala. 376.

4. The statute of limitations certainly ran against all the *children* of Mrs. Fretwell. They were all alive at the time Hopper made his inventory and long afterwards. They were then of age. When the statute once commences to run, it is not suspended by intervening disabilities or exceptions. The fact that Charles W. Fretwell died in 1864, that no administration was had on his estate, and that he has one *minor* child, cannot prevent the statute from running. It is certain that the *children* of Esther are all barred. And even if the fact of the death of Charles W., and that there was no administration on his estate; that he left no debts, and has one minor child, could give that minor child the right to maintain this suit, the others being all barred, the minor is likewise barred for joining with those who are barred. All the complainants must be entitled to relief, or none can be. In such case there is a misjoinder of parties complainant, which necessarily dismisses the bill, if not amended. See *Hardeman* v. *Sims*, 3 Ala. 747; *Wilkins* v. *Judge*, 14 Ala. 135; Brickell's Dig. p. 750, § 1634.

5. As to Hannon's administrator, there is an additional ground of demurrer. The claim of complainants was never presented to him. It is barred as to him by this non-claim. If there was anything in the facts which could show that the statute of non-claim did not present a bar, it was incumbent on the complainants to show this in their bill. See *Sims* v. *Canfield*, 2 Ala. 555; *Nimmo* v. *Stewart*, 21 Ala. 692; *Johnson* v. *Johnson*, 5 Ala. 90; *Byrd* v. *McDaniel*, 33 Ala. 18; Story's Eq. Pleadings (3d. ed.), §§ 484, 485, 503, and note to 503; Rev. Code, §§ 2239, 2240.

But it may be said that the exception in favor of minors in section 2240 will apply here.

It is not shown that there is any minor child of Esther Fretwell to whom it could apply. If it could be applied to the minor child of Charles W. Fretwell, it could not apply to any other complainant. As to the other complainants, the *non-claim* is a bar. And they being barred, the minor is barred by misjoinder with the other complainants.

It may be said that this is a suit by *heirs*, *legatees* (*distributees*) *as such*, and that *non-claim* is not a bar in such case under section 2240. The case of *Harrison* v. *Harrison* (39 Ala.) is cited by the counsel for appellant. The decision cannot be supported on any principle of sound logic. If the

reasoning of that case is sound, the distributees of an estate may divide the estate amongst themselves, distribute the choses in action belonging to said estate amongst themselves, and each distributee, then, under our present statute, could sue the maker, or rather the administrator of the maker, of some note thus distributed. See *Carter* v. *Owens*, 41 Ala. 217.

If the administrator pleaded the statute of non-claim, the distributee might successfully reply, " He is suing as an *heir*, *legatee*, or *distributee*," and this replication would be held good, if the reasoning in *Harrison* v. *Harrison* be sound. If administration had been granted on the estate owning the note, and the administrator had sued on the note against the administrator of the maker, it is clear that the statute of non-claim would be a bar, if more than eighteen months had elapsed. In such case, where the distributee sues on the note, as in *Carter* v. *Owens*, *supra*, he is substituted in place of the administrator, and he no more sues as an *heir*, *legatee*, or *distributee* than the administrator sues as an heir, &c.

Here Hannon, as administrator of a surety on Hopper's bond, is sued to make him liable for an alleged default of Hopper, the administrator of Fretwell. The statute of non-claim is certainly good as to the children of Charles W. Fretwell, for they are not suing as heirs, legatees, or distributees of Esther Fretwell. The statute of non-claim being a bar as to them, they have no right against Hannon's estate ; and having joined as complainants with the distributees of Esther, defeats the whole suit, for the misjoinder of complainants.

But the reasoning in *Harrison* v. *Harrison* is unsatisfactory, as applied to the facts of that case. It is said the claim of the distributee is not *against* the estate, but is *in* the estate. But, the statute declaring the bar *uses* the words, " claims *against the estate.*" The plain, common sense meaning of the statute is, that such claims, whether *against* or *in* the estate, must be presented within the time prescribed. A creditor of the estate, who has a better right *in* the estate or *against* the estate than the heir or distributee, must present his claim within eighteen months. The distributee has no claim, either *in* or *against* the estate, until all debts are paid. The creditor has, therefore, a better right *in* the estate than the heir. How can it be reasonably said, therefore, that the creditor's claim is *against* the estate, and that of the distributee is *in* the estate ? The obvious meaning of section 2240 of the Revised Code is, that, so far as heirs or distributees are concerned, they are not barred, *as against the administrator of their ancestor*, if their claim as heirs or distributees is not presented within eighteen months after grant of administration. This section

[Fretwell *v.* McLemore.]

of the Code has no application to claims which distributees of *one* estate may have against the administrator of *another* estate.

The claim of the complainants is not *in* the estate of Hannon, but is *in* the estate of their mother, Mrs. Fretwell.

BRICKELL, C. J. (after stating facts as above). — We propose to consider the causes of demurrer in the order in which we have stated them.

In *Gardner* v. *Gantt* (19 Ala. 668), DARGAN, C. J., said: "The distributees or next of kin can maintain no suit, either at law or in equity, for the mere purpose of distribution, until letters of administration have been duly granted upon the estate of the deceased. This principle is well settled by authority, but even without decided cases no other rule could obtain, for the reason that the law casts the title to all the personal estate of the decedent upon his personal representative. It is true that he holds the title as trustee, to pay the debts in the first instance, and then to make distribution, according to the statute, amongst those entitled. But until letters of administration have been granted, the legal title cannot be brought before the court, and therefore it cannot be bound by the decree; nor can the court see that the trusts have been executed." The case before the court was a bill in equity by the remainder-men of personal property, bequeathed by will, after the death of the tenant for life, for the recovery and distribution of the property bequeathed, which was in the possession of vendees of the life tenant, and averred payment of all the debts of the testator, but failed to show that there had ever been any administration of his estate. The bill was dismissed. There is a series of decisions in this court, asserting that when an estate is left entirely free from debt, the distributees may in equity obtain distribution without the delay and expense of administration. The first of these is *Bethea* v. *McCall* (5 Ala. 308), which was a bill for an account and settlement of a trust estate. Two of the donees died in infancy, and the survivors, who were the complainants in the bill, were their next of kin. It was objected that the personal representatives of the deceased donees were necessary parties. The court said, in answer to the objection, "There was no necessity to take letters of administration upon the estates of the two brothers who died during infancy. The survivors were the heirs at law, and as they had no capacity to contract debts, cannot be presumed to have any creditors." In *Miller* v. *Eatman* (11 Ala. 614), which was an action at law, and was held not maintainable, because the personal representative of a deceased infant was not joined as

a plaintiff, it is said : " In courts of equity, where it is not nec-
essary that the legal title should be vested in the plaintiff, an
administration may be dispensed with, when the right is as-
serted by those who would be entitled to distribution, and
when it is clear there are no creditors to be prejudiced.   Such
was the case of *Bethea* v. *McCall*, 5 Ala. 315.   But even these
are exceptions to the general rule, which is the same in equity
as at law." In *Vandeveer* v. *Alston* (16 Ala. 494), the husband
of a sole distributee, without administration, took possession of
the personal property of an intestate, paid the debts, and re-
mained in possession, until the death of the wife, when her
next of kin had administration granted of the estate of the in-
testate, and sought to recover of him the property of the in-
testate.   A court of equity intervened for his protection, and
in pronouncing the opinion of the court, CHILTON, J., said :
" In case of a sole distributee, the claims of creditors aside, I see
no principle of public policy requiring the party to push the
property through the diminishing process of administration."
In *Frowner* v. *Johnson* (20 Ala. 482) the subject was again be-
fore the court, and GOLDTHWAITE, J., in delivering the opinion
of the court, used this language : " We do not say that there
may not be cases where it is allowable *for the distributee of a
deceased distributee to take without the intervention of an ad-
ministration*, but those cases are properly regarded as excep-
tions to the general rule, and to sustain them it is necessary
to show affirmatively that an administration would have been a
useless ceremony." *Plunkett* v. *Kelly* (22 Ala. 655) presented,
as did *Frowner* v. *Johnson*, the question here involved.   It was
a bill filed for the settlement of an estate by several complain-
ants, claiming to be next of kin of the decedent, one of whom
deduced his right through his parent, who died after the de-
cedent.   The bill contained no allegation showing that admin-
istration of the father's estate " would have been a useless
ceremony," and was deemed fatally defective on general de-
murrer.   In *Vanzant* v. *Morris* (25 Ala. 285) the surviving
brothers and sisters of a deceased infant were permitted in
equity to recover a legacy bequeathed to them jointly with
him, without administration on his estate, when there were no
debts against it.   In *Marshall* v. *Crow* (29 Ala. 298), which
was a bill for partition of personal property between tenants
in common, one of whom had died, and of whose estate there
had been no administration, the court said : " When an estate
is left entirely free from debt, and the distributees do not in-
voke the action of the probate court to separate their several
interests, but ask the chancellor to give them their several
shares without an administration, the bill will be sustained, and
the relief granted."   The surviving tenants were the next of

[Fretwell v. McLemore.]

kin of the deceased tenant. The rule to be extracted from these decisions is, that a court of equity will dispense with an administration, and decree distribution directly, when it affirmatively appears, that, if there was an administrator, the only duty devolving on him would be distribution. Then administration is regarded as " a useless ceremony." An administrator or an executor is a trustee clothed with the legal title. He holds in trust for creditors and distributees or legatees. The creditors are entitled to charge the assets with the payment of their debts, in priority of the equity of distributees or legatees. When there are no debts, the equity of the distributees or legatees is perfect ; the legal title, if there was a personal representative, would be a naked trust, which a court of equity ought not and would not permit to be interposed as a bar to the equitable title of the distributee or legatee. *Vandeveer* v. *Alston, supra; McCaa* v. *Wolf*, 42 Ala. 389. There may be expressions in *Vandeveer* v. *Alston* indicating that an administration will be dispensed with only when there is a sole distributee. We do not suppose the court intended to be so understood. The expressions were used in reference to that particular case, in which there was a sole distributee, whose husband was claiming to have reduced the personal estate to possession during her life, and that thereby his marital rights had attached. *Plunkett* v. *Kelly, supra*, certainly announced the true rule, and is not at all inconsistent with our conclusions. It did not affirmatively appear that there were not debts against the deceased distributee. For aught that appeared from the bill, the distributees were seeking, through the instrumentality of a court of equity, to obtain property which ought to have been charged with the debts of the intestate. There was not under the allegations of this bill a misjoinder of complainants. The children of Esther, and her grandchildren, the children of her son, dying after her death, could join. They had a community of interest, and were entitled to relief of the same character.

As we have stated, the intestate, of whose estate distribution is sought, was at her death a resident citizen of Georgia. The want of proper parties complainant, which is made a cause of demurrer, rests on the proposition, that an administration in this State is ancillary. The duty of the administrator is confined to the collection of the assets here, the payment of domestic debts, if any, and the expenses of administration, and the transmission of the *residuum* to an administrator appointed in the domicil of the intestate. For such *residuum*, the administrator here is liable not to the distributees, but to an administrator appointed in the domicil only. It appears from the allegations of the bill, that there has been and is no administration of the estate of the intestate in the State of

Georgia; that there are no debts existing against her; that the complainants are her only distributees, and reside in Georgia. An administration granted in another forum than that of the domicil of the intestate is treated as ancillary merely. This term serves only to distinguish the one administration from the other. It does not indicate a dependence of the foreign administration on that of the domicil. Judge STORY, in *Harvey* v. *Richards* (1 Mason, 381), in discussing the proposition involved in the demurrer, said: " One objection urged against the exercise of the authority of the court is, that as national comity requires the distribution of the property according to the law of the domicil, the same comity requires that the distribution should be made in the same place. This consequence, however, is not admitted; and it has no necessary connection with the preceding proposition." Again, he says: " The administrator here is not a mere agent of the administrator abroad. He collects and receives the assets in his capacity of administrator generally; and so far as it may be wanted for the payment of debts and legacies, he holds it in trust for the creditors and legatees, and as to the *residuum*, in trust for the next of kin; and even if he were a mere agent of a trustee, the *cestuis que trust* would be entitled to claim the fund directly from him, for a court of equity may follow a trust fund in whosoever hands it may come." He concludes, that whether the court here ought to decree distribution, or remit the property abroad, is a matter, not of jurisdiction, but of judicial discretion, depending upon the particular circumstances of each case. That there ought to be no universal rule on the subject, but that every nation is bound to lend the aid of its own tribunals for the purpose of enforcing the rights of all persons having title to the fund, when such interference will not be productive of injustice or inconvenience, or conflicting equities. Adopting this view secures justice to all parties having rights or interest in the administration. If there are debts abroad, in equity chargeable on the. assets, according to the law of the domicil, the court here would not decree distribution. It would direct their transmission to the domiciliary administrator, to be administered by him under the law, and subject to the responsibilities attaching to him in the forum of his appointment. *Childress* v. *Bennett*, 10 Ala. 751. If there are not outstanding debts, the administrator here is a trustee for the next of kin, and it would be vain and useless to subject the assets to the diminishing process of another administration, creating only the trust already existing, and capable of enforcement. The domiciliary administrator would have no duty to perform except that of distribution. It cannot be material who is the trustee making the distribution, and we

can perceive no reason for requiring the interposition of a foreign administrator to do that which the domestic administrator is as capable of doing. The foreign distributees subject themselves voluntarily to the jurisdiction of our courts, ask only relief the court is fully competent to grant, and which in effect the court would grant, if the domiciliary administrator was seeking it. When no beneficial purpose is to be accomplished by the presence of a personal representative, as we have seen, a court of equity will directly decree distribution. It will not take the assets from one, for the mere purpose of making them pass through the hands of another to the proper recipients. The reason and rule apply to the case before us. *Carmichael* v. *Ray*, 5 Iredell Eq. 365. The statutes of this State are in recognition and affirmation of the rule as stated by Judge Story. R. C. § 2163–4.

The next cause of demurrer is, that the case presented by the bill is *primâ facie* within the statute of limitations, and if there be any cause for excepting it out of the statute, the cause should have been averred. The statute invoked is the sixth division of § 2901 of the Revised Code (the section declaring that actions which must be brought within six years), and reads as follows: "Motions and other actions against the sureties of any sheriff, coroner, constable, or any public officer, or actions against the sureties of executors, administrators, or guardians, for any misfeasance or malfeasance whatever of their principal; the time to be computed from the act done, or omitted by their principal, which fixes the liability of the surety." So far as this statute relates to the sureties of public officers, it is a reënactment of the statute of 1832. Clay's Dig. 329, § 90. This statute was construed in *Governor* v. *Stonum* (11 Ala. 679), and *Governor, use, &c.* v. *Gordon*, 15 Ala. 72. The first was an action against the surety of a sheriff, for moneys collected under execution by the principal. The statute was declared to commence running in favor of the surety, from the time the execution was returned satisfied. The other case was an action against the surety of a notary public, to charge him for the failure of the principal to give an indorser of a promissory note the notice requisite to charge him. It was held, the statute commenced running from the day of the notary's default, and not from the time of its discovery, or the ascertainment of the damage by the injured party. There is not great difficulty in fixing the period from which the statutory bar shall be computed as to the sureties of a public officer. Each of his actions or omissions generally fixes not only his own liability, but that of his surety, and each furnishes a separate and independent cause of action, in favor of different parties. There is greater difficulty in fixing the time

from which to compute the statutory bar, as to the sureties of an administrator, executor, or guardian. The administration or guardianship is treated as an entirety, having its inception in the grant of letters, and continuing until a final settlement, or until a termination of the authority the letters confer. The administration necessarily comprises many separate acts and transactions, all of which impose liability, or all of which rather fall necessarily within the liability the bond creates. The condition of the bond is general, for the performance of all such duties as are or may be imposed by law. This condition, according to its literal import, is broken, whenever the principal neglects or violates any duty the law imposes. For such neglect or violation the surety is chargeable by virtue of the condition of the bond. They often furnish cause for removal of the principal and the revocation of his authority. R. C. § 2017–18. Of themselves they do not create a cause of action against, or fix the liability of the surety. Before any cause of action arises against the surety at law, and before the liability is fixed at law or in equity, there must be a judicial ascertainment of the default of the principal. 2 Stew. & Port. 70; Ib. 263, 384; 2 Port. 236, 538; 6 Port. 393; 22 Ala. 693; 24 Ala. 418. From the period the default is thus ascertained, the statutory bar in favor of the surety must be computed. The judicial ascertainment is conclusive on the surety, in the absence of fraud or collusion, when made on the final settlement of the administration in the court of probate. *Ragland* v. *Calhoun*, 36 Ala. 612. If it is a judgment at law in favor of a creditor, it is conclusive, except as to the existence of assets, or an actual *devastavit*. *Dean* v. *Portis*, 11 Ala. 104; *Reid* v. *Nash*, 23 Ala. 733. The judicial ascertainment creates the cause of action against the surety, authorizing the enforcement of the liability imposed by the bond. The theory on which statutes of limitations rest is, that the party to be affected by them has a right to prosecute his cause of action, from the day on which the bar commences. This right cannot be ascribed as to the surety of an executor or administrator, until the liability of the principal is ascertained. If the bar of the statute, as to such surety, should be regarded as commencing from any day prior to this ascertainment, it must be from each default of the principal. Each default must then be considered as fixing the liability of the surety, and as giving a cause of action against him. From liability for a *devastavit* committed to-day, the statute would commence to run. From liability for a *devastavit* committed twelve months hence, the bar would commence to run from its commission. Each *devastavit* would create a cause of action, and the period for the commencement of the bar would be as

various as the times of their commission. We cannot adopt this construction of the statute. It would render it almost impracticable of application, and work serious injustice to those having a right to rely on the bond, as a continuing security for the liability of the principal, unaffected by the operation of the statutes of limitation, until they have a right to sue on it. When the statute was enacted, the decisions of this court had established beyond controversy, that a judicial ascertainment of the liability of the principal was indispensable to fix the liability of the surety. It was in view of these decisions the statute was passed; and when it speaks of the act done, which fixes the liability of the surety, we think it must be referred to this judicial ascertainment of the liability of the principal. The liability has its origin in the bond, and it is created, whenever the condition of the bond is broken, by a failure of the principal to perform the duties required by law. The views we have expressed accord with the decisions of this court in *Ward* v. *Yonge*, 45 Ala. 474; *Rives* v. *Flinn*, 47 Ala. 481. The bill negatives the fact that there had been a judicial ascertainment of the liability of the principal, and of consequence was not subject to demurrer as averring a cause of action within the bar of the statute of limitations.

The remaining cause of demurrer is that assigned by the administrator of Hannon alone, — that it is shown by the bill that more than eighteen months had elapsed from the grant of administration to him, and a presentment of the claim or demand was not averred. The failure to present a claim or demand, within the period prescribed by the statute of non-claim, as a bar, like the statute of limitations, must in a court of law be specially pleaded, or it is not available as a defence. *Mardis* v. *Smith*, 2 Ala. 382. The rule is different in a court of equity; the defence may then be made by plea, answer, or demurrer, and when it is interposed in the one mode or the other, if there are any special circumstances, or any reason for excepting the case out of the statute, it must be introduced by an amendment to the bill. *Maury* v. *Mason*, 8 Port. 211; *Nimmo* v. *Stewart*, 21 Ala. 692; *Morton* v. *Ragland*, 41 Ala. 344. No cause for excepting the case made by the bill out of the statute is averred, and the only question arising on the demurrer is, whether the cause of action preferred is a claim which should have been presented to the administrator. The claim existed, and was as fully and completely the subject of suit against the intestate, at and prior to his death, as when this suit was commenced. The liability was not fixed so as to authorize a suit against the surety, nor was it fixed so as to authorize a suit against the personal representative. The liability originating on the bond had accrued, and the period prescribed by the

statutes, as that within which the distributees could claim distribution, having arrived, a court of equity, in the exercise of its original and inherent jurisdiction over trusts, would have called the principal to account and distribution ; and to avoid a multiplicity of suits, would have entertained a suit against principal and sureties jointly.  There was, therefore, a claim against the intestate at his death, and the claim is now the subject of this suit.

The statutes in reference to the probate of wills, the grant of letters testamentary and of administration, the collection, preservation, and distribution of the assets, the payment of debts and legacies, the enforcement of the liability of executors and administrators to creditors, heirs, and legatees, and to their successors in the administration, were intended as the introduction and establishment of a new system, which of necessity supersedes to a great extent the rules and principles of the common law. All  these statutes are in *pari materia*, and when a judicial construction is placed on any one of them, it would not only be unsafe, but would mar and disturb the harmony of the system, if its connection with and relation to other parts was not observed and kept in view.

One of the most manifest purposes this system was intended to accomplish is the speedy settlement of the claims of creditors, and the consequent distribution of the *residuum* to the heirs or next of kin, appointed by law to succeed to it ; or to the legatees or devisees to whom the testator has devised or bequeathed it.  That these, the manifest and controlling purposes of all the statutes, and of the system they ordain, may be accomplished, the court of probate is established with large powers, capable of more speedy exercise than the powers of other judicial tribunals ; and the remedies to be pursued are simpler and less dilatory than those common to other courts. A preference to the right of administration is declared, but those on whom it is conferred must elect to accept and assume it, within the brief period of forty days after the death of the intestate is known, or it is relinquished, and the power of the court to grant it to a person of its own selection becomes ample and indisputable.  If no person applies for the administration within sixty days after the death, the general administrator of the county, if there be one, and if none, the sheriff or coroner, is compellable to accept it, and the administration attaches to the office of sheriff or coroner, and his official oath and bond is a security for the faithful administration.  Chap. 3, tit. 4, part 2, R. C.  Within a very limited period, the estate of every deceased person, under the operation of these provisions, must pass into the custody of the law, and the officers charged with its care and preservation are required to give bonds, with approved

sureties, for the protection of all having interests in the estate. Should the necessities of the case require it, the court of probate can immediately, on the death of any person within its jurisdiction, appoint a special administrator to collect and preserve the assets, until a general administration can be had. R. C. §§ 1994–97. This special administrator cannot pay the debts, and is not subject to suit as the representative of the deceased. He is the administrator *ad colligendum* of the common law, and his only duty is the collection and preservation of the assets. *Erwin* v. *Br. Bank Mobile*, 13 Ala. 307. Against the general administrator no suit can be commenced until the expiration of six months after the grant of administration, or of letters testamentary, and no judgment rendered until the expiration of eighteen months after the grant. R. C. §§ 2276, 2649, 3264. Unless an executor or administrator voluntarily reports to the court of probate the solvency of the estate he represents, no proceeding can be instituted to compel him to pay legacies, or make distribution, until the lapse of eighteen months from the grant of letters testamentary or of administration. R. C. chap. 6, tit. 4, part 2. "All claims against the estate of a deceased person must be presented within eighteen months after the same have accrued, or within eighteen months after the grant of letters testamentary, or of administration; and if not presented within that time are forever barred." R. C. § 2239.

There can be but one purpose in these statutory provisions, and that purpose is the speedy administration of estates; first, for the benefit of creditors, who have the priority of right, and when their claims are satisfied, the payment of legacies, or distribution to the heir or next of kin. When the heir or legatee succeeds to the estate, that it shall be to a title freed from the incumbrance of, or liability to debts. In subservience to this purpose has been the uniform construction of these statutes, and specially of that last referred to, known as the statute of non-claim, which is now the subject of consideration. In the absence of this statute, a settlement of an administration, and the payment of legacies and the making of distribution, would be attended with the peril of future litigation by creditors against the legatees or distributees, to subject their legacies or distributive shares to the payment of debts. In making distribution, or paying legacies, the personal representative would act at his own hazard. For, as is stated by Williams, the "authorities seem to demonstrate that the mere circumstance of want of notice of a debt or claim against the estate of the deceased will not excuse an executor or administrator from the payment or satisfaction of it, if the assets were originally sufficient for the purpose, notwithstanding that, in ignorance of the

existence of the debt or claim, he has *bonâ fide* handed over the
assets to the legatees or parties entitled to share in distribu-
tion." 2 Williams on Ex'rs, 1216. In view of these perils, and
the litigation and delays incidental to administrations at com-
mon law, the statute was enacted. The construction it has re-
ceived has been that which was necessary to avoid the evils to
which we have adverted as incidental to an administration gov-
erned by common law principles. It has been deemed to oper-
ate a complete bar to all demands, which could be charged on
the assets subject to administration; a bar on which the per-
sonal representative could rely with safety, and proceed to pay
legacies or make distribution; a bar which a creditor could in-
voke, to protect the assets subject to the payment of his' debt
from diminution, by being compelled to allow participation
therein by those not having presented their claims within the
prescribed period; a bar on which the heir or legatee may insist,
for the exclusion of all claims not presented, which would re-
duce or exhaust the assets, otherwise subject only to pay lega-
cies, or to distribution. *McBroom* v. *Governor*, 6 Port. 32;
*Thrash* v. *Sumwalt*, 5 Ala. 13. The absence of the adminis-
trator from the State will not prevent the bar from attaching,
nor will his death occurring after the time has commenced run-
ning. *Br. Bank Decatur* v. *Hawkins*, 12 Ala. 755; *Lowe's
Adm'r* v. *Jones*, 15 Ala. 545. The personal representative
cannot, after the expiration of the statutory period, revive a
claim, by a promise to pay it. *Br. Bank Decatur* v. *Hawkins*,
12 Ala. 755. Knowledge of the existence of the claim, on the
part of the personal representative, no matter how full and
complete, will not dispense with an actual presentment, or
something equivalent thereto. *Jones* v. *Lightfoot*, 10 Ala. 17.
This construction harmonizes with the construction of similar
statutes, framed to accomplish similar purposes in other states.
*Brown* v. *Anderson*, 13 Mass. 201; *Thompson* v. *Brown*, 16
Mass. 172; *Heath* v. *Weed*, 5 Pick. 140; *Spalding* v. *Butts*,
6 Conn. 23; *Gookin* v. *Sanford*, 3 N. H. 491; Ang. on Lim.
§ 170.

The language of the statute is clear, unambiguous, and com-
prehensive. Words more significant to express every demand
to which a personal representative can or ought to respond,
or which can charge the assets in his hands subject to admin-
istration, or more expressive of every legal liability, resting
upon the decedent, could not have been employed. "All
claims against the estate of a deceased person," is the language
of the statute. A claim, said Judge STORY, in a just, judicial
sense, is "a demand of some matter as of right made by one
person upon another, to do or to forbear to do some act or
thing as a matter of duty." 16 Peters, 615. All claims

[Fretwell v. McLemore.]

whether absolute or conditional, whether payable presently or in the future, are within the statute. *Jones* v. *Lightfoot, supra; King & Barnes* v. *Mosely*, 5 Ala. 610; *Smith* v. *Grant*, 2 Root (Conn.), 142. It is only contingent claims — claims which may never accrue — that fall within the provision postponing a presentment "until eighteen months after the same have accrued;" such as the liability of a surety who has no demand against the principal until his payment of the debt for which he is bound. *Neil* v. *Cunningham*, 2 Port. 171; *McBroom* v. *Governor*, 6 Port. 32; *Cawthorne* v. *Weisinger*, 6 Ala. 714; *Hooks & Wright* v. *Br. Bank Mobile*, 8 Ala. 380; *Winter & Gayle* v. *Br. Bank Mobile*, 23 Ala. 762. Or the claim which was the subject of suit in *Pinkston* v. *Huie* (9 Ala. 252), dependent on a future contingency which might never happen. "But the contingency excepted from the operation of the statute cannot depend upon the action of the court in granting or refusing relief. If the party is not entitled to a judgment or decree at the hands of the court, he has no claim against the estate, and there is an end of the controversy. If he is, it cannot be considered as contingent, whether it will be granted or refused." *Jones* v. *Lightfoot, supra*. At common law, an executor or administrator, was charged with notice of all judgments existing against the testator, or the intestate. 2 Williams on Ex'rs, 922. Yet judgments higher in dignity than any other claim recognized by law must be presented, or they fall within the bar of this statute. *Ready* v. *Thompson*, 4 St. & Port. 52. *Ray* v. *Thompson*, 43 Ala. 454. In *Elleson* v. *Halleck* (6 Cal. 386), in construing a similar statute, said the court: "The word 'claim,' employed by the statute, is sufficiently comprehensive to include every species of charge or account against an estate, whether the same be recorded or not." In *Foster* v. *Maxey* (6 Yerg. 224), a suit to recover of the administrator of a surety of a guardian the amount due from the guardian on his removal, during the life of the surety, was held to be a debt barred by the operation of a statute limiting the time within which suits against executors or administrators could be commenced. In *Williams* v. *Conrad* (11 Humph. 412) it is held, that the statute declaring the creditors of any deceased person should make their claim within seven years after the death of such person, embraced all persons having demands originating from contracts or agreements. A similar construction was placed on a statute of Arkansas, requiring the presentment of all claims and demands against the estate of a deceased person. "All claims capable of being asserted in any court of justice, either of law or equity, existing either at the time of the death of the deceased, or coming into existence at any time after the death, and before the ex-

piration of two years," excluding only inchoate and contingent demands, were declared within the statutory bar. ˙ *Walker* v. *Byers,* 14 Ark. 246. On the dissolution of a partnership, the active partner by agreement with his copartner retained possession of the partnership property, promising to pay the partnership debts. The partnership property became so intermingled with the individual property of the active partner, that on his death it was not distinguishable and separable. To a bill filed for an account and settlement of the partnership, and a decree against the personal representatives and heirs of the active partner, for the copartner's share of the partnership property, the statute of limitations of Massachusetts, barring suits against personal representatives not commenced within four years from the time of their accepting the trust, was pleaded as a bar. The statute was declared not to apply to claims on specific property held in trust by the decedent, and which passed to the possession of the personal representative or heir; but if the property had no ear mark, and was not distinguishable from the rest of the property of the deceased, the party entitled to it was but a general creditor whose claim was barred by the statute. *Johnson* v. *Ames,* 11 Pick. 173.

The principle on which these authorities rest is, that every claim or demand which can be made the foundation of suit against the personal representatives, and the recovery of which will diminish the assets in his hands, subject to administration for the benefit of creditors, of heirs or legatees, falls within the operation of statutes prescribing a bar to suits against him. The same principle must be, and has been applied to our statute of non-claim. The purpose of that statute, as of the similar statutes in other States, on which the decisions cited were made, is the exemption of assets subject to administration from all liability to claims not presented, within the prescribed period. The exemption is intended to promote the speedy settlement of administrations, the payment of debts, the satisfaction of legatees, and the final distribution of the assets. The whole policy of the statute, and of the system of which it forms a part, would be defeated, if such was not its operation. The statute as it is now found in the Code was originally enacted in 1815. Clay's Dig. 195, § 17. By the common law as it prevailed here, when this statute was enacted, it was only actions *ex contractu,* causes of action originating in contract, that survived for or against personal representatives. *Blakeney* v. *Blakeney,* 6 Port. 109; *Nettles* v. *Barnett,* 8 Port. 181. The common law rule was modified and changed by legislation, from time to time, until now all actions on contracts, express or implied, and all personal actions, except for

injuries to the person or reputation, survive in favor of or against the personal representative. R. C. § 2555. It cannot be denied that as the causes of action which would survive against a personal representative were enlarged, they fell within the operation of the statute, and if not presented within the period prescribed, they are barred.

The claim now preferred is to charge the assets for administration, in the hands of the personal representative of the surety, with the satisfaction of a *devastavit* imputable to the principal long prior to the death of the surety. It would nullify the purposes of the statute to exempt this claim from its operation. Its satisfaction would as certainly divert the assets from distribution, and disappoint the claims of the distributees, as the satisfaction of a promissory note made by the intestate, or of a judgment existing against him. There is nothing in the character of the liability which will deprive it of the character of a claim requiring presentation. A *devastavit* at common law was a tort, and on the death of the personal representative, all remedy at law was lost, on the maxim, "*Personalis actio moritur cum persona.*" The only remedy was in equity, where the administration was treated as a trust. *Taliaferro* v. *Barrett*, 3 Ala. 670 ; 2 Williams on Ex'rs, 1565, 1712 ; 2 Red. on Wills, 238. The defect in the common law was remedied by acts of parliament. 30 Car. II. c. 7, and 4 & 5 Wm. & M. c. 24, § 12 ; 2 Williams on Ex'rs, 1712. Under these statutes, it became the settled law, that a party injured by a *devastavit* was a simple contract creditor, within the operation of the English statute of limitations of six years. 2 Williams on Ex'rs, 1565. The general rule of the common law is, that breaches of trust are mere simple contract debts, unless they arise from the violation of a sealed instrument, and then they partake of the character of the instrument, and become debts due by specialty. 2 Red. Wills, 238. A *devastavit* here at law and in equity is treated not only as a breach of trust, but as a breach of contract, — a non-performance of the condition of the bond given, — and like all other breaches of contract, actions for its redress survive against the personal representatives of principal or of surety. There can be no claim springing from a breach of contract, not within the statute of non-claim.

The counsel for appellants concede the claim made by the bill is within the statute of non-claim, but they insist it is within the exception of the statute in favor of "heirs or legatees claiming as such," and rely on the authority of *Harrison* v. *Harrison*, 39 Ala. 489. That case sustains the proposition. We cannot however follow it as a correct exposition of the law. That it operates to narrow the benefits of the statute, no more striking illustration could be afforded than this case presents.

The object of the statute is the protection of the personal representative, the creditors, and the heirs or distributees of the estate against which the claim is preferred, — not of any other estate, certainly not of representative, creditor, or heir of another estate, which is to be enlarged by diminution of the estate to be charged. These will be protected by the statute, when a claim is preferred against the estate, to which they stand in the relation of representative, creditor, heir, or distributee. The whole theory of the statute is to create a defence broader in its operation than the statute of limitations, not only barring remedies, but extinguishing debts and liabilities. From the operation of this statute is excluded persons not *sui juris* (who are generally excluded from the operation of the statutes of limitations), infants and *non compotes mentis*. These are allowed to present their claims within eighteen months after the removal of their disabilities. Having made this exception, the statute declares it shall not apply " to heirs or legatees claiming as such." R. C. § 2340. The effect of the decision in *Harrison* v. *Harrison, supra*, is, that whenever heirs or legatees are claiming in that character, no matter against what representative, or of what estate, because of the character in which they claim, they are excepted from the operation of the statute. If that be true, it leads to the result that they are excepted entirely and absolutely, — there is no event in which the statute can ever operate on them. Infants and persons of unsound mind fall within its operation, if within eighteen months after the removal of their disabilities they do not present their claims. But heirs or legatees fully *sui juris*, in no contingency or event are required to present their claims, no matter of what estate they claim. It is competent for the legislature thus to except them, or any other class of individuals, from the operation of a statute, but the exception should be clearly expressed, and not deduced from language obscure and ambiguous, if that is its interpretation. As we have said, a new system in reference to administrations was being established, and of that system this statute was a part. Heirs or legatees, by other provisions of the statutes, were precluded from claiming payment of their legacies, or compelling distribution, until eighteen months after the grant of letters testamentary, or of administration. Being thus precluded, that a provision should be introduced into the statute of non-claim excepting their claims as heirs or legatees, from its operation, was indispensable to the harmony of the system. And it was in this view that the exception was introduced, to preclude the possibility of a construction that would enable a personal representative, who is their trustee, to interpose the statute as a bar to distribution of the assets in his hands. Adopting this construction of the exception renders it harmo-

nious with the policy pervading the system of which it is a part. Any other construction contravenes this policy, and as to parties claiming as heirs or legatees renders the statute of no avail, and as to such parties subjects an administration to all the evils incidental to an administration governed by common law principles. The reason assigned in *Harrison* v. *Harrison* against this construction is, that it denies to the exception all operation whatever, because without the exception the statute of non-claim would not embrace the claims of heirs or legatees, to inheritances or bequests, coming to them directly from the estate of which they are heirs or legatees. It could as well be said, that every statute, which is affirmatory or declaratory of the existing law, is without operation. Every statute book abounds with such statutes, and there are numerous sections of the Code of this State, which are mere repetitions of the common law, as pronounced by the decisions of this court. The statutes of Elizabeth denouncing fraudulent conveyances, were but an affirmation of the common law. *Adams* v. *Broughton*, 13 Ala. 739. It was never permitted to a debtor fraudulently and covinously to aliene or grant his property for the purpose of hindering or delaying his creditors. Such alienation or grant was as void at common law as under the statute. Because this is true, it has never been supposed the statute was incapable of operation, or that any other field of operation for it should be sought than was given the common law principles it declares and affirms. The first chapter of the Code is devoted to the signification of words and phrases as used in the Code. The meaning declared is generally that which the common law would have affixed, in the absence of these declaratory provisions. "Property," would have included real or personal property ; "real property," would have been deemed coextensive with lands, tenements, and hereditaments ; a "month," or a "year," would, if not otherwise expressed, have signified a calendar month or year. The time within which an act was to be done, would have been computed by excluding the first and including the last day. *Owen* v. *Slatter*, 26 Ala. 549. Numerous instances will suggest themselves to the professional mind, in which the Code is but an expression of a rule of the common law, and often of decisions of this court. To avoid so regarding them, and ascribing to them some other field of operation than that given them at common law, no meaning has been imputed to them which would defeat a well defined policy the statutes intend to advance. The statute we are considering affords an illustration of the introduction into the Code of the law as declared by judicial decision. The statute of 1815 did not declare the revival of a pending suit, or the commencement of a suit within eighteen months, should operate as a present-

ment. This court declared such suit was a sufficient present-ment. *Hunley* v. *Shuford*, 11 Ala. 203. This decision forms substantially now a part of the statute of non-claim. R. C. § 2242. We do not regard it as an objection to the construction we place on the statutory exception under consideration, that thereby it is rendered merely affirmatory of the law as it ex-isted, and would have been without the exception.

The claim of " heirs or legatees claiming as such," excepted from the operation of the statute of non-claim, is not a claim *against*, but a claim *to* the estate. It is a claim to that portion of the estate to which, if the person through whom they claim died intestate, they are entitled by virtue of the statutes of descents and distributions, or if he died testate, to which they succeed under his last will. If the administrator or executor dies, having specific property in his hands unadministered or unconverted, then as to such property the claim to it, whether preferred by heirs or legatees, or a succeeding representative, is not within the statute of non-claim. It is a claim of title, which, like all other claims of title, is not a claim chargeable on the assets in the hands of the personal representative for ad-ministration. *Locke* v. *Palmer*, 26 Ala. 312 ; *Johnson* v. *Ames*, 11 Pick. 173. When however, the claim is for a *devastavit* committed by an administrator or other trustee, it is a claim for a debt, not in its technical sense of an ascertained sum, but for a sum of money due from one person to another, the amount to be rendered certain by evidence. The relation existing be-tween the parties is, then, that of debtor and creditor. 2 Red. on Wills, 238 ; 2 Williams on Ex'rs, 1765. *Johnson* v. *Ames*, *supra ; Trecothick* v. *Austin*, 4 Mason, 29. Between the surety of an executor, administrator, or guardian, and an heir or lega-tee, no other relation than that of debtor and creditor can exist. The relation of trustee and *cestui que trust* does not and never did exist between them. The privity between them originates in, and is dependent upon the bond. When the heir or legatee seeks a recovery from the surety for a breach of the bond, he claims as a creditor only. From his relation of heir or legatee to another, he deduces his right as a creditor, and that relation is indispensable to his character of creditor. As we have al-ready said, on another branch of this case, it is only after the heir or legatee has fixed the default of the executor or admin-istrator at law, by the judgment or decree of a competent court, that he can maintain any action at law on the bond. Until then, he has no cause of action at law against the surety. The cause of action is then *ex contractu* founded on the bond, and is that of a creditor, in form, characteristics, and rights. It does not vary from that of a creditor of the decedent, who has obtained judgment against the executor or administrator.

[Malone v. Hundley.]

The case of *Harrison* v. *Harrison, supra*, has stood for nearly eleven years. So far as we can discover, it has not, on the point we have considered, been questioned or affirmed. It does not announce a principle on which title to property may have been acquired or lost; it cannot be supposed to have become an element of contracts, or to have affected business transactions. We do not perceive any result it can have induced, other than passiveness in the presentment of claims against deceased persons, on the part of a particular class, which in others would have been laches fatal to their claims. We have the most profound respect for the court pronouncing the opinion in that case, and are deeply impressed with the necessity of a strict adherence to precedents. We cannot resist, however, the conviction, that it impairs the beneficial operation of one of the most important statutes to be found in our statute book, — a statute founded on the wisest public policy, affording protection to the living and the dead; a statute, which gives repose to society, quiets litigation, removes temptations to fraud and perjury, secures titles, and preserves domestic peace. We are constrained, therefore, to declare it overruled, so far as it may conflict with this opinion.

The result is, the demurrer of the defendant Hannon was well taken on the ground of the statute of non-claim. The demurrer of the defendant McLemore was not well taken on any of the grounds specified.

The decree is reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.

JUDGE, J., having been of counsel for appellees, not sitting.