Pursuant to Rule 18, A.R.App.P., this Court accepted the following certified questions from the United States District Court:
 "1. Is Duff Phelps' claim against Smith's estate barred by the Alabama Statute of Nonclaim, § 43-2-350(b), Code *Page 698 of Alabama 1975, or is it a 'contingent claim' within the exception to that statute?
 "2. Does Duff Phelps' claim survive Smith's death by virtue of § 6-5-462, Code of Alabama 1975, and/or § 6-5-464, Code of Alabama 1975?"
The following statement of facts accompanied the certified questions:
 "Defendant/Third-Party Plaintiff Duff Phelps, Inc. ('Duff Phelps'), was a management consultant to defendant Alabama Gas District (the 'Gas District') from April 1, 1955 until April 30, 1984 (Third-Party Complaint, ¶ 6). Under the terms of the management consultant agreements, Duff 
Phelps provided a resident 'general manager' for the Gas District to manage and administer the natural gas business of the Gas District under the supervision and control of the Gas District's board of directors (Third-Party Complaint, ¶ 8). From June 1, 1956 through April 30, 1984, Duff Phelps provided Robert J. Smith (hereinafter 'Smith') to serve as a general manager. Smith was employed as a vice president of Duff Phelps from June 1, 1956, to December 31, 1982, and as an independent consultant to Duff Phelps from January 1, 1983 to April 30, 1984 (Third-Party Complaint, ¶ 9).
 "On June 9, 1989, plaintiff Alabama Kraft Company ('Alabama Kraft') filed its First Amended Complaint which added Duff Phelps as a party to its case pending against the Gas District. The First Amended Complaint avers that Smith was aware that the Gas District had received substantial refunds from its supplier, Southern Natural Gas, which were applicable to gas supplied by the Gas District to Alabama Kraft, and that while employed by Duff Phelps, Smith determined and directed that these refunds not be passed on to Alabama Kraft, contrary to Alabama Kraft's contract with the Gas District. Smith also allegedly determined and directed that the existence of the refunds be suppressed and concealed from Alabama Kraft. Alabama Kraft also alleges upon information and belief that other agents and employees of the Gas District and/or Duff Phelps were also aware of such refunds and participated in the suppression and concealment of such refunds from Alabama Kraft (First Amended Complaint, ¶ 28). Alabama Kraft avers that the actions of the Gas District and Duff Phelps constitute fraud by suppression of material fact under § 6-5-102, Code of Alabama
1975, fraud by deceit under §§ 6-5-103 and 104, Code of Alabama 1975, fraud as defined by § 6-11-20(b)(1), Code of Alabama 1975, conspiracy to defraud, and interference with Alabama Kraft's contractual relationships (First Amended Complaint, ¶¶ 36, 40, 43, 45, 48, 51).
 "On October 6, 1989, Duff Phelps filed a Third-Party Complaint against the Estate of Robert J. Smith, averring that if Duff Phelps is liable to Kraft for failing to turn the refunds over to Kraft, then the Estate of Smith is liable to Duff Phelps for indemnification (Third-Party Complaint, ¶ 12) because:
 "(a) Alabama Kraft's claims against Duff 
Phelps are premised on the actions and conduct of Smith (Third-Party Complaint, ¶ 11);
 "(b) Any decision by Smith not to pass through the refunds received by the Gas District was made without proper authority, was never communicated to Duff Phelps and was never approved, adopted, or ratified by Duff Phelps (Third-Party Complaint, ¶ 12a); and
 "(c) Smith's acts and omissions constituted a breach of his duty to exercise reasonable care in the performance of his duties, responsibilities, and obligations as an employee of Duff Phelps (Third-Party Complaint, ¶ 12b).
 "Duff Phelps also averred that it was unaware of the claim against it arising out of Smith's conduct until it was served with the First Amended Complaint on June 12, 1989, and that its claim against Smith had not accrued at the time of Smith's death and is dependent on Duff Phelps' being held liable to *Page 699 
Alabama Kraft for the conduct of Smith (Third-Party Complaint, ¶ 14).
 "Based upon the foregoing averments, Duff 
Phelps seeks judgment against the Smith Estate for indemnification for any monetary judgment rendered against it in favor of Alabama Kraft (Third-Party Complaint, ad damnum clause).
 "Robert J. Smith died on September 5, 1987. Vera Smith was issued Letters Testamentary as Executrix of the Estate of Robert J. Smith on September 14, 1987. Newspaper notices were duly published on September 19 and 26, 1987, and October 3, 1987. Duff Phelps did not file a claim against the Estate of Smith within six months after the grant of Letters Testamentary to Vera Smith (or at any other time), as provided for by the Alabama Statute of Nonclaim, § 43-2-350, Code of Alabama
1975.
 "On November 2, 1989, Smith's estate moved to dismiss the Third-Party Complaint, or alternatively for summary judgment, on the grounds that: (1) the Third-Party Complaint was barred by the Alabama Statute of Nonclaim, § 43-2-350, Code of Alabama 1975, since no claim was filed within six months (or at any time) after the date the Letters Testamentary were issued for the Estate; and (2) the Third-Party Complaint does not survive Smith's death, and is barred by the provisions of § 6-4-462, Code of Alabama 1975."
 ANSWER
Question 1: "Is Duff Phelps' claim against Smith's Estatebarred by the Alabama Statute of Nonclaim, § 43-2-350(b), Codeof Alabama 1975, or is it a 'contingent claim' within theexception to that statute?"
Section 43-2-350(b) provides, in part, as follows:
 "All claims against the estate of a decedent, other than the claims referred to in subsection (a) of this section, whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however, that any creditor entitled to actual notice as prescribed in section 43-2-61 must be allowed thirty days after notice within which to present the claim, and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited."
The purpose of § 43-2-350(b) is " 'to promote a speedy, safe and definitive settlement of estates by giving the personal representative notice of all claims against the estate in his hands.' " Moore v. Stephens, 264 Ala. 86, 91, 84 So.2d 752, 758
(1956) (quoting Smith v. Fellows, Adm'r, 58 Ala. 467 (1877); see, e.g., Lett v. Watts, 463 So.2d 138 (Ala. 1984); Motley v.Battle, 368 So.2d 20 (Ala. 1979); Fretwell v. McLemore, 52 Ala. 124
(1875). The phrase "[a]ll claims against the estate of a decedent" has been interpreted to include both contract and tort claims. Ivory v. Fitzpatrick, 445 So.2d 262 (Ala. 1984);Fox v. Wood, 382 So.2d 1118 (Ala. 1980); Moore v.Stephens, supra. See also Motley v. Battle, supra (phrase applies to counterclaims). However, this Court has long recognized an exception to the presentment requirement under §43-2-350(b) for contingent claims that have not accrued at the time letters testamentary have been issued. See HartfordAccident Indem. Co. v. Kuykendall, 287 Ala. 36, 247 So.2d 356
(1971); Fretwell v. McLemore, supra, and Jones' Executors v.Lightfoot, 10 Ala. 17 (1846). This Court stated in Fretwell:
 "All claims whether absolute or conditional, whether payable presently or in the future, are within the statute. It is only contingent claims — claims which may never accrue — that fall within the provision postponing a presentation 'until eighteen months after the same have accrued'; such as the liability of a surety who has no demand against the principal until his payment of the debt for which he is bound. Or the claim which was the subject of suit in Pinkston v. Huie
(9 Ala. 252) [until minor became of age, no claim existed because no determination could be made as to whether the principal *Page 700 
obligor defaulted], dependent on a future contingency which might never happen. 'But the contingency excepted from the operation of the statute cannot depend upon the action of the court in granting or refusing relief. If the party is not entitled to a judgment or decree at the hands of the court, he has no claim against the estate, and there is an end of the controversy. If he is, it cannot be considered as contingent, whether it will be granted or refused.' "
52 Ala. at 140-41 (citations omitted). In Moore v. Stephens,supra, this Court further defined a "contingent claim" as excluding claims for unliquidated damages:
 " 'A claim in tort, as to which a right of action arose immediately upon the doing of a wrong, may not be proved as a debt, but it is by no means a contingent claim. Whether the claimant in tort will recover, is uncertain; but this is true of all claimants, whatever be the nature of their claims, whether for liquidated or unliquidated damages or whether the claim arises in tort or in contract; and, if such claimants are allowed to recover, the amount of the damages which may be awarded is uncertain, but these circumstances do not render their claims contingent. A "contingent claim," within the meaning of the statute, is one that depends for its effect upon some future event which may or may not happen. Until that event happens a right of action upon such claim does not arise. The evident purpose of the statute would be defeated if we should exempt from its operation persons having claims arising in tort or for unliquidated damages.' "
264 Ala. at 89, 84 So.2d at 755-56 (quoting Hicks v. Wilbur,38 R.I. 268, 94 A. 872 (1915)) (emphasis added).
This Court has held that one who acts as a surety is not barred from bringing a claim against his principal. InHartford Accident Indem. Co. v. Kuykendall, supra, J.P. Kuykendall brought suit for a declaration of his rights against the administrator of the estate of L.B. White. Kuykendall had allegedly acted as a surety for L.B. White on two promissory notes. He argued that because he paid the notes as surety he had a claim against the decedent's estate and that the claim was not barred under the nonclaim statute. This Court held that Kuykendall's claim was contingent and therefore fell under the nonclaim statute exception. See Fretwell v. McLemore, supra;
see also Edgehill Corp. v. Hutchens, 282 Ala. 492,213 So.2d 225 (1968) (rent claim was contingent where lease provided for contingencies).
Principal-surety relationships are similar to master-servant or principal-agent relationships because in both cases a principal, master, or one acting as a surety may recover from his agent, servant, or principal, respectively, once the underlying liability or obligation is paid. In In re CovingtonGrain Co., 638 F.2d 1357, 1362 (5th Cir. 1981), the court stated that "[u]nder the principles enunciated in AmericanSouthern Insurance Co. v. Dime Taxi Service, Inc., . . . a master is entitled to recover from his servant damages which the master has been required to pay by reason of the negligence of his servant." In American Southern Ins. Co. v. Dime TaxiServ., Inc., 275 Ala. 51, 151 So.2d 783 (1963), this Court stated that a master could collect from its servant (or its servant's liability insurer) damages paid by reason of its legal responsibility for the servant's negligent acts. See Hueyv. Dykes, 203 Ala. 231, 82 So. 481 (1919). This right of indemnity is usually founded upon an implied contract or legal duty. See Travelers Indemnity Co. v. Firestone Tire RubberCo., 360 F. Supp. 1328 (S.D.Ala. 1973); Belcher v. BirminghamTrust Nat'l Bank, 348 F. Supp. 61 (N.D.Ala.), stay denied,395 F.2d 685 (5th Cir. 1968). Such a right to indemnity does not arise, however, until one acting as surety satisfies his principal's obligation, or until a master or principal pays damages arising from his servant's or agent's negligent or fraudulent acts. Nevertheless, this Court recognizes a difference between principal-surety relations and master-servant or principal-agent relations, because a master or principal in an agency situation normally has more control over its servant or agent than does one who acts as surety. We find that the right *Page 701 
to indemnification for a master or principal is contingent and falls within the established exception to § 43-2-350(b). However, a master or principal in an agency relationship must prove that he or she, acting with reasonable diligence, did not or could not discover the servant's or agent's tortious acts resulting in the claim against the master or principal.
Duff Phelps's claim is not barred by § 43-2-350(b), because it is contingent in nature and thus falls within the established exception to § 43-2-350(b). Because Duff Phelps may proceed with its-claim without bar, we find it unnecessary to consider the second question.
QUESTION ANSWERED.
JONES, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.