[Steele v. Graves et al.]

# Steele *v.* Graves *et al.*

*Motion by Surety on Administrator's Bond to Quash Execution.*

1.   *Surety on administrator's bond; execution against where there are two administrations on the estate.*—When an administrator resigns, and is re-appointed, giving a new and different bond, and decrees are rendered against him as administrator under the second appointment, and on a settlement of the second administration, no execution can issue on such decrees against the sureties on the first bond.

2.   *Same; execution against quashed or corrected under facts of this case.* When, in such a cause, executions are issued against the sureties on both bonds the Probate Court should, on motion, quash, or correct them by striking out the names of the sureties on the first bond, and failing or refusing to do so, this court will render a decree correcting and amending the execution by striking out their names.

3.   *Same; liability of for administrator's defaults is not fiduciary debt.* The liability of a surety on an administrator's bond for the defaults of his principal is not a fiduciary debt within the meaning of the bankrupt act.

4.   *Same; discharge in bankruptcy does not relieve from liability.*—Under the bankrupt act of 1867 the liability of a surety on an administrator's bond, before there has been any settlement of the estate, or any decree fixing the liability of the administrator to the estate, is not a provable debt, and a discharge in bankruptcy does not relieve the surety from liability for decrees subsequently rendered against his principal.

5.   *Case overruled.*—The case of *Jones v. Knox*, 45 Ala. 53, which asserts that such liability is a provable debt, but furnishes no means of estimating it, is overruled.

APPEAL from Perry Probate Court ; the Register in Chancery presiding, *pro hac vice*, on account of the incompetency of the Probate Judge.

This was a motion made by R. L. Steele, the appellant, to quash certain executions issued out of the Probate Court of Perry County. On July 15, 1865, said Steele became one of the sureties on the bond of W. B. Modawell as administrator of the estate of R. H. Hudson. On May 30th, 1868, Steele was adjudicated a voluntary bankrupt by the United States District Court for the Southern District of Alabama, and on July 27, 1869, received his discharge. On February 13, 1871, Modawell resigned his administration, and on February 15, 1871, he was reappointed, giving a new and different bond as administrator. No settlement of the estate was made until May, 1878, when the balance against the administrator was ascertained to be $28,156.65. Decrees were rendered against the administrator in favor of the distributees of the estate, and after executions against him were returned

[Steele v. Graves et al.]

"no property found," other executions were issued against the sureties, on both his bonds. There were motions made to quash each execution on each decree, on the ground that the sureties on the first bond were not liable for the second administration. The facts in regard to this aspect of the case are set out fully in the opinion of the court in the case of *Steele et al. v. Graves et al.*, on page 17 of this volume, and need not be repeated here. In addition to these motions Robert L. Steele filed a separate motion as to each execution on each decree, seeking to have them quashed as to him on the ground that he had been discharged from liability because he had received his discharge in bankruptcy. A demurrer was interposed to this motion on the ground that the motion did not show that the debt, from which said Steele claimed to have been discharged, was one which was provable under the bankrupt act, and because the motion showed that it was a debt of a fiduciary character and was not discharged by bankruptcy. The court sustained the demurrer and refused to quash the executions. The rulings of the court in sustaining the demurrer, and in rendering judgment against the movant on the motions to quash, are assigned as error.

W. M. BROOKS, E. W. PETTUS, W. E. CLARKE, and J. F. VARY, for appellants.

J. H. STEWART, J. W. BUSH, and A. C. HOWZE, for appellees.

STONE, J.—In one aspect, this case is in precisely the same condition as the case of *E. A. Steele et al. v. Graves*, 68 Ala. 17. Following that decision, the judgment of the Probate Court is reversed, and here rendered, correcting the executions, by striking from them the name of Robert L. Steele as one of the defendants.

Robert L. Steele, the appellant in this cause, claims that he should be exonerated from said decrees, and from the executions thereon, by reason of his surrender and discharge in bankruptcy. The administration bond, on which he became bound as surety, was executed and approved July 15, 1865. On the 30th day of May, 1868, the said Robert L. was, on his own petition, adjudged a bankrupt, and on the 27th day of July, 1869, he received his certificate of discharge. February 13th, 1871, W. B. Modawell, his principal, resigned the administration of said estate; and two days afterwards—February 15th, 1871—he was reappointed administrator of the same estate, and gave another bond, with dif-

ferent sureties. No settlement of either administration is shown, until May 1878. The record shows a settlement then made, ascertaining that there] was, on 13th February, 1871, a balance of assets in the hands of the administrator, over disbursements, of some nineteen thousand dollars. This sum the administrator was ordered to carry forward as a debit in the second administration. He, immediately afterwards, and on the same day, proceeded to settle his second administration. Decrees of distribution were rendered against him, and on those decrees executions were issued, and returned "no property found." Executions were then issued against the administrator and his sureties on each of the bonds. The present appellant relies on his discharge in bankruptcy as a complete, personal discharge of himself. His liability is certainly not a fiduciary debt, and, on that account, excepted from the operation of the bankrupt discharge.—Rev. Stat. U. S. § 5117, and notes in Bump on Bankruptcy, 10th ed., pages 741-4. Section 5115, Rev. Stat. U. S., gives the form, and declares the effect of a discharge in bankruptcy. It is "from all debts and claims which by said title are made provable against his estate, and which existed on the —— day of ———, on which day the petition for adjudication was filed by (or against) him." Was the present claim a provable debt or claim against the bankrupt? The clauses of the bankrupt law of 1867, bearing on the question of what are provable debts or claims, are as follows:

"Sec. 5067.—All debts due and payable from the bankrupt at the time of the commencement of the proceedings in bankruptcy, and all debts then existing but not payable until a future day, a rebate of interest being made when no interest is payable by the terms of the contract, may be proved against the estate of the bankrupt. Sec. 5068.—In all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with the right to share in the dividends, if the contingency happens before the order for the final dividend ; or, he may, at any time, apply to the court to have the present value of the debt or liability ascertained and litigated, which shall then be done in such manner as the court shall order, and shall be allowed to prove for the amount so ascertained. Sec. 5069.—When the bankrupt is bound as drawer, indorser, surety, bail, or guarantor upon bill, bond, note, or any other specialty or contract, or for any debt of another person, but the liability does not become absolute until after the adjudication of bankruptcy; the creditor may prove the

same after such liability becomes fixed and before dividend is declared."

We have now copied all the clauses of the bankrupt law of 1867 which bear on the question of the provableness of the present claim. We apprehend no serious controversy can arise in the construction of section 5067. It provides for the proof of debts only, and divides them into two classes—debts due, and debts not due when proved. We pass, for the present, over section 5068. Section 5069, we think, has nothing to do with this case. It provides only for liabilities of some one of the classes enumerated, when the liability becomes fixed before final dividend is declared. In that event only can such liability become a provable claim under that section. When does the liability of a surety on an administration bond become fixed and absolute? In *Fretwell v. McLemore*, 52 Ala. 124, 136, this court, in speaking of the liability imposed by an administration bond, said : "The administration necessarily comprises many separate acts and transactions, all of which impose liability, or all of which rather fall necessarily within the liability the bond creates. The condition of the bond is general, for the performance of all such duties as are, or may be imposed by law. This condition, according to its literal import, is broken, whenever the principal neglects or violates any duty the law imposes. For such neglect or violation the surety is chargeable by virtue of the condition of the bond. * * Of themselves they do not create a cause of action against, or fix the liability of the surety. Before any cause of action arises against the surety at law, and before the liability is fixed at law or in equity, there must be a judicial ascertainment of default of the principal. * * * The judicial ascertainment creates the cause of action against the surety, authorizing the enforcement of the liability imposed by the bond."

We return to section 5068 of the Revised Statutes. That section is divisible, and seems to provide two modes of procedure. It relates to "contingent debts and contingent liabilities contracted by the bankrupt," and, as we have said, provides two modes of relief to the creditor. The first clause authorizes such creditor to make claim, have his claim allowed, and to share in the dividends, "if the contingency happens before the order for the final dividend." It is clear that under this clause, the claim is not provable, so as to allow the creditor to share in the dividends, unless the contingency happens—the debt or liability becomes fixed and absolute—before the order for final dividend. Now, in the case of an administration bond, the liability can not become a fixed debt, until there is a final statement and settlement of

[Steele v. Graves et al.]

the entire administration. Till there is a decree for distribution, or a judgment against the administrator for the payment of money, there would seem to be no means by which to determine whether or not the administrator had wasted or converted the assets. The law would rather presume he had faithfully preserved the funds of the trust estate in his hands, as it was his duty to do. As a rule, the simplest administration of an estate can not be closed or settled in less than eighteen months. If there is litigation, the settlement is delayed much longer—frequently for many years. While the bankrupt law was in force, it was possible for one or more of the sureties on an administration bond to become bankrupt, at any stage of the administration. Suppose the administration had just commenced, and no moneyed assets had come to the hands of the administrator. Suppose he had received moneys, had them in safe custody, and subsequently—long after the adjudication, or even the discharge in bankruptcy—he committed a devastavit. The condition of the bond is, that the administrator will perform all the duties which are, or may be imposed on him by law. In addition to the preservation of the assets during the whole administration, no matter how long it may last, the law makes it the duty of the administrator to make final settlement, and pay out the moneys of the estate as he may be decreed to pay them. And the surety binds himself, by the bond he executes, that the administrator will perform all these duties—the last as well as the first. How can it be known, or ascertained, during the early stages of the administration, that there will be a default, or the extent of it? How can it be known until final settlement? And, as the liability of the surety is accessorial and contingent, how can it be ascertained and fixed? A rule, to be sound and satisfactory, should be adapted to all probable conditions. In which of the varying, possible stages of an administration can the liability of a surety be ascertained and fixed, and how ascertained?

Let us pass to the second clause of the section, which authorizes the creditor to apply, at any time, to the court, to have the present value of the debt or liability ascertained and litigated. How can this be done, particularly in the early stages of the administration? Who are the creditors, interested in having the claim allowed? Evidently the legatees or distributees of the estate, and all the creditors. Now, creditors have eighteen months, under our statutes, within which to make their claims known to the administrator. Minors and persons of unsound mind have eighteen months, after the removal of their several disabilities. All these per-

sons have interests which are secured by the bond ; and that security continues until the complete administration, disbursement and distribution of the estate, unless the bondsman is relieved from further liabilities on the bond, by proceedings under the statute ; and this relief he can not obtain, until two years have elapsed after the grant of the letters.—Code of 1876, § 2385. How, under section 5068 of the Revised Statutes, the court will be able to order the manner by which the extent of liability of a surety on an administration bond is to be ascertained and fixed, it is difficult to conjecture. The creditors and distributees of the estate, as we have shown, may all be classed as creditors, to whom the bankrupt owes contingent liabilities. Each and all of these will have the right to prove their claims in the bankruptcy, when the amount is ascertained. A proceeding instituted for ascertainment would be defective and invalid as a judicial proceeding, if it failed to make the creditors parties, and to notify them. We need not enumerate the troubles—nay, insurmountable difficulties—to be encountered in this kind of proceeding. The bankrupt court has no power to compel the administrator to resign, to force him to a premature settlement of the administration, or to procure the discharge of the bankrupt surety from the administration bond. Will any one contend the whole bankrupt proceeding must be suspended, until the contingency happens which determines the liability of the surety, and the extent of it. The whole policy of the bankrupt law forbids this, and we apprehend no one would contend for such construction. Where the contingency which renders the liability absolute, happens before the order for final dividend is passed, the claim may be proved. Can it be done otherwise, when the liability is of the character mentioned in these proceedings?

What are the import and scope of the terms "contingent debts and contingent liabilities," under section .5068 of the Revised Statutes of the United States ? These terms are very indefinite. A debt or liability may be absolutely fixed and certain as to the amount of it, and yet contingent as to the time of payment. It may be certain as to the time of payment, and yet contingent on some future collateral event as to the sum to be paid. Or, it may be contingent in both aspects. An annuity charged on property, or by contract, payable during the life of another, is a contingent liability or debt, for it can not be known how long the annuitant will live. Yet, the value of such annuity can be ascertained, by consulting the tables of mortality. Insurance against accidents, losses by fire, and against perils of the sea, are contingent liabilities. Contingent as to when, and whether there
Vol. LXVIII

[Steele v. Graves et al.]

will ever be any actual or fixed liability, and, frequently, as to the amount of it, should the event or accident happen. So, the bond of an officer, or one acting in a fiduciary relation, imposes a conditional liability on the surety, contingent on his principal's breach of duty or trust, both as to the amount of the liability, and the time of its happening. It may never happen. In the case of an official bond, the difficulty of declaring by an order in what manner the debt or liability shall be ascertained and liquidated, will, if possible, be much greater than in the case of an administration bond. It can not be known when, if ever, there will be an official default, or who will be the sufferer to make proof of a claim. We are not aware of any reliable tables of official defalcation, to guide in fixing the value of such contingent liability.

The language of section 5068 sheds light on the question we are considering. True, its language is, " in all cases of contingent debts and contingent liabilities." It shows what class of contingent debts and contingent liabilities it refers to, in the concluding words of the first paragraph. It is such as can become fixed and absolute, and do so become, by the happening of the contingency, before the order for the final dividend; and such as, under an order of the court, prescribing the manner, are of a character to be susceptible of ascertainment and liquidation. At the time of Mr. Steele's discharge in bankruptcy, so far as we are informed by this record, the contingency had not happened which fixed his liability. We are not informed when the order for the final dividend was made, and can not presume it was delayed until after the settlement of the administration was made in May, 1878—nine years after his discharge. Neither do we think the liability was of such a character, as that the court in bankruptcy could have had its present value ascertained and liquidated, by any order he could have made for the purpose. We therefore hold that the bankrupt's liability as surety on the administration bond was not a provable debt.

This far we have treated this question as *res integra.* It has been many times before the courts, and there is a great want of harmony in their various rulings. Several of the decisions we shall cite were pronounced on the bankrupt statute of 1841, which provided that proof of claims might be made by " all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, indorsers, bail, or other persons having uncertain or contingent demands against such bankrupt."—5 Stat. at Large, 444. In *Eastman v. Hibbard,* 54 N. H. 504, suit was brought on an injunction bond, which had been given to stay the collection

[Steele v. Graves et al.]

of an execution. Pending the injunction, the surety on the bond became a voluntary bankrupt under the act of 1867, and received his discharge. He pleaded this in bar of the action on the bond. The court, after quoting section 19 of the act—5068 of the Revised Statutes—said : "It was obviously impossible for the plaintiff to avail himself of either of these provisions ; the contingency did not happen before the order for the final dividend, and there was no basis upon which the present value of the liability could be ascertained and liquidated. Whether any liability, contingent or otherwise, would ever arise upon the bond, could not possibly be ascertained at that time, and was not in fact ascertained till five years afterwards." The defense was disallowed. The case of *Loring Judge v. Kendall, Administrator*, 1 Gray, 305, was a suit on an administration bond, and arose under the act of 1841. The opinion is by SHAW, C. J. He said : "The case, then, was that of a subsisting, outstanding, unbroken bond, on which the bankrupt stood as surety, conditioned for the performance of duties created by law, by an administrator having the means in his power to perform all those duties ; for he could be no further liable than he had assets to meet such liability. It was, therefore, in legal effect, a bond conditioned for the fidelity of an officer appointed by law, to discharge plain and well defined duties. Such an existing obligation, we think, can in no just sense be considered a debt, either *in presenti*, or *in futuro*. It may, in case of any future breach, be the foundation of a debt ; but any claim arising from it, in the nature of a debt, will arise from the breach, and not from the mere existence of the obligation. Nor can this come under the head of contingent claims, as expressed in the fifth section of the bankrupt act. This applies to the case of debts *in presenti*, and which will become payable by lapse of time only ; and if it applies to contingent debts, such as those of indorsees, sureties, bail, &c., it means that when their debts become absolute, such creditors shall have a right to prove, and have them allowed. . . The actual breach upon which the condition of this bond afterwards became forfeited, took place ten years after, when the administrator, upon being cited, failed to appear and render an account ; and thereupon a cause of action accrued. To this, the court are of opinion the defendant Lawrence's discharge in bankruptcy in 1842 is no bar." See, also, *Ellis v. Ham*, 28 Me. 385 ; *Fowler v. Kendall*, 44 Me. 448 ; *Pogue v. Joyner*, 1 Eng. (Ark.) 241.

The following authorities hold the opposite doctrine, but none of them attempt to show how the value of such claim could be ascertained and liquidated.—*Tobias v. Rogers*, 3

Ker. 59; *Reitz v. People*, 72 Ill. 435; *Jones v. State*, 28 Ark. 119; *Choate v. Quinichett*, 12 Heisk. 427.

The following cases, properly understood, do not bear on the question we are discussing: *Mace v. Wells*, 7 How. U. S. 272; *Williams v. Harkins*, 55 Ga. 172; *McMinn v. Allen*, 67 N. C. 131; *Bowie v. Puckett*, 7 Humph. 169; *Lipscomb v. Grace*, 26 Ark. 231; *U. S. v. Throckmorton*, 8 B. R. 309; *Vaughn v. Carn*, 10 Gratt. 758; *Fulwood v. Bushfield*, 14 Penn. St. 90.

This question has been twice before this court; first, in *Turner v. Esselman*, 15 Ala. 690, under the bankrupt law of 1841. The opinion of the majority of the court is rested on a clause not found in the act of 1867. Judge Dargan concurred in the judgment of the majority, holding the surety not discharged by his bankruptcy. One of the reasons he gave was, that he did not consider the debt was provable under the bankrupt act, at the time the defendant in error was declared a bankrupt. He gave a second reason which is not in harmony with present rulings. The other case is *Jones v. Knox*, 46 Ala. 53, in which it was held that the liability of a surety on a guardian bond was a provable demand, and, for that reason, released by the discharge in bankruptcy. Like the other cases of similar bearing, it fails to inform us how such liability can be proved as a debt—how its value can be ascertained and liquidated. We differ with our predecessors who rendered that judgment, and overrule that case.

Reversed and remanded.