[Sullivan v. Lawler.]

# Sullivan *v.* Lawler.

*Bill in Equity by Distributees, against Administrator and other Distributees, for Account, Settlement, and Distribution.*

1. *When distributees may sue, without administration.*—As a general rule, distributees or next of kin can not, in the absence of an administration duly granted, maintain a suit at law or in equity for the mere purposes of administration, nor, in the absence of special circumstances, maintain a suit for the collection of personal assets; and although there are exceptional cases, in which a court of equity will decree distribution directly to the next of kin, without the intervention of an administrator, when it is clearly shown that, if one were appointed, his only duty would be distribution; yet such relief will not be granted at the instance of the next of kin of a deceased adult legatee, upon a mere general allegation that there are no outstanding debts against his estate, when such allegation is made upon information and belief merely, and it is not shown that the information was obtained from persons having knowledge of the facts.

2. *When distributees or administrator may or must sue.*—When there is an administrator of the estate of a deceased legatee, he is the proper person to sue for the legacy; consequently, the next of kin, or distributees of his estate, can not join in a bill with the surviving legatees, making the administrator a defendant.

3. *When distributees may maintain suit against administrator and debtors, jointly.*—The distributees of a decedent's estate can not maintain a bill in equity against the personal representative and debtors of the estate jointly, without alleging fraud and collusion between them, or a refusal by the personal representative to sue for and collect the debts.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 18th February, 1882, by Rhoda Sullivan and others, children and grandchildren of Benjamin Lawler, deceased, claiming as residuary legatees under his will, against Benjamin F. Lawler, who was a son of said decedent; and prayed "that said Benjamin F. Lawler be required to account to complainants, as residuary legatees under the will of said Benjamin Lawler, deceased, for their interest in the said assets of said Benjamin's estate that went into his (the said Benjamin F.'s) hands; and that said Benjamin F. be required to produce all books, memoranda, vouchers, and accounts of sale in his possession, relating to the said assets that went into his hands, for inspection; and that they be produced on oath, in such manner as this honorable court shall think right and proper; and that said Benjamin F. make a full discovery of all assets of said estate that went into his hands; and orators

[Sullivan v. Lawler.]

pray for a reference to the register of this honorable court, to state an account against the said Benjamin F., charging him with all sums he is justly chargeable with, and giving him credit for all sums to which he is justly entitled; and that whatever sum may be found due to your orators may be paid over to them as their share of their said residuary interest in the same under the will of said Benjamin Lawler, deceased, and to those who are children and heirs-at-law of some of said distributees; and for such other and further relief as to the court may seem meet and proper."

Benjamin Lawler died in April, 1863; and his last will and testament, under which the complainants claimed as residuary legatees, was duly admitted to probate, in said county of Madison, soon after his death. Said will, a copy of which was made an exhibit to the bill, contained the following (with other) provisions: "I will and bequeath to my beloved wife, Rhoda, all my estate, real, personal, and mixed, during the term of her natural life, with full power to transact any and all business that she may think proper. It is my wish and desire, that my son Benjamin continue to live upon the premises, and give his attention to the business and interest of his mother. It is my will and desire, that my lands be divided in the following manner: . . . I will and direct, at the death of my wife, that all of my lands lying south of west line running by my gin-house to Flint river, be sold, and the proceeds arising from the sale be equally divided [among?] my daughters. The balance of my estate, at the death of my wife, I desire to be sold, and the proceeds to be equally divided between my children, share and share alike. . . . I will and bequeath to my grandson, James Wood, and my granddaughter, Rhoda Lou Wood, an equal share with my daughters." The testator's widow was appointed the executrix of his will, without bond or security; but the bill did not allege whether she had ever qualified as executrix, nor whether she was living or dead.

The testator's children, living at his death, were these: Rhoda Sullivan (a married woman, who was one of the complainants), Eliza Wilson (a married woman, one of the complainants), Martha Sanford (a married woman, one of the complainants), Caledonia Winston, Jehu Lawler, James H. Lawler, John Lawler, Jesse Lawler, and said Benjamin F. Lawler, the defendant. Mrs. Caledonia Winston, it was alleged, died, intestate, in September, 1879, "without being in debt;" and her children, as her heirs and distributees, were joined as complainants in the bill. Jesse Lawler died, intestate, on the 18th September, 1869, and letters of administration on his estate were granted to said Jehu and John Lawler; and while his widow and children were joined as complainants in the bill, it was

alleged that said Jehu and John Lawler, the administrators, claimed to be creditors of his estate, and it was necessary that. a special administrator *ad litem* of his estate should be appointed by the court. It was alleged that James Wood, the grandson of the testator, died, intestate, on the 10th November, 1881;. and his widow and children were joined as complainants in the bill. As to the estates of said James Wood and Mrs. Caledonia Winston, the bill alleged, "that there are no debts against the said estates, as orators are informed and believe, and upon such information and belief state the facts to be, and no administration on said estates has been granted." On these facts stated in the bill, the complainants claimed that they represented and were entitled to "six-elevenths of said estate," and that the *defendants* were entitled to "the remaining five-elevenths;" but Benjamin F. Lawler was the only person who was named as a defendant to the bill.

As to the assets of the estate in the hands of the said Benjamin F. Lawler, and the grounds on which relief was sought: against him, the bill contained these allegations: "Orators show that said Benjamin Lawler left a large amount of property on hand at his death, including a large number of bales of cotton, averaging from 475 to 500 pounds each; and that said Benjamin F. Lawler, one of the defendants hereto, some time previous to the death of his father, cultivated jointly with his father a large portion of the father's plantation, under contract that he, said Benjamin F., was to have one-fourth of the crops for his services in superintending the business, and in consideration of his labor and stock furnished by him; and that he was on the plantation superintending its cultivation on these terms, at his father's death, and so continued during said year 1863; and that a large quantity of cotton, corn, &c., were produced on said place during said year 1863. Orators charge that said Benjamin F. Lawler took possession of said cotton, corn, and other property on said place, which was the property of said Benjamin on hand at his death, and took possession of said property, corn, cotton, &c., produced on said place during the year 1863; and orators charge that they are entitled to a discovery from said Benjamin F. of said assets that went into his hands, and that this discovery is indispensable to the ends of justice; that orators have not a full, adequate, and complete remedy at law, for this purpose. Orators charge, that they are informed and believe, and upon such information and belief charge the facts to be, that said defendant has in his possession a book or books, memorandum or memoranda, or an account or accounts of sales of the assets of said estate of said Benjamin Lawler, deceased, vouchers for moneys pretended to have been received, for debts pretended to been paid out on account of

[Sullivan v. Lawler.]

said estate, none of which can be more particularly designated for want of more definite information on the subject; and that a production of said book or books, memorandum or memoranda, account or accounts of sales of the said assets, is necessary."

The chancellor dismissed the bill, on motion, for want of equity; and his decree is now assigned as error.

BRANDON & JONES, for appellants.

CABANISS & WARD, contra.

BRICKELL, C. J.—While adhering to the general rule, that next of kin, or distributees, can not, in the absence of an administration duly granted, maintain suits at law or in equity for the mere purposes of distribution, nor, in the absence of special circumstances, maintain suits for the collection of personal assets; yet, in exceptional cases, when it is clearly and affirmatively shown that, if there was an administration, the only duty attaching to it would be distribution, courts of equity in this State have been accustomed to dispense with the administration, entertain suits by next of kin, and decree distribution directly to them.—*Fretwell v. McLemore*, 52 Ala. 124.

Within this exception it is insisted that the present bill is brought, in which the next of kin of deceased legatees join with the surviving legatees, praying a settlement of the testator's estate, and distribution to them directly. The deceased legatees were all probably adults—three of them certainly were; and upon information and belief it is averred, that upon the estates of three no administration had been taken, and that no debts exist against them. The other deceased legatee has personal representatives, who are made defendants, and there are debts existing against him. The allegation that there is no administration, and no debts as to three of the deceased legatees, is very general, and is made expressly, not upon knowledge of the facts, but upon information and belief, without any indication that the information was obtained from persons having knowledge, or the means of acquiring knowlege of the facts. It would be hazardous for a court of equity to depart from its general rules, upon an allegation so general and unsatisfactory, and render a decree which the parties affected by it can not safely obey, and which, so far from quieting, may become the fruitful source of future litigation. For, if an administrator should be appointed subsequently, he would not be bound by the decree, and it would not protect the parties against whom it is rendered, so far as the claims he could rightfully assert would be concerned.—*Gardner v. Gantt*, 19 Ala. 666.

But there is yet another fatal defect in parties to the bill.

[Sullivan v. Lawler.]

'There is an administration of the estate of Jesse Lawler, a de-
·ceased legatee, whose next of kin are joined as complainants,
while the administrators are made defendants. It is obvious,
·the administrators only can sue for and recover the legacy of
their intestate. As well could the next of kin maintain a suit
for the recovery of a debt due the intestate, wresting it from
the due course of administration, as to maintain the present
·suit.

The bill also seeks the recovery of debts due the testator,
without the averment of fraud or collusion between the debtor
and his personal representatives. The debtors of a decedent
·can not properly be made parties to a bill against the personal    .
representatives, by creditors or legatees, unless it be averred
that there is collusion between them and the personal repre-
·sentative, or that he refuses to collect the debts.—Story's Eq.
Pl. § 178. There is no such averment found in the bill.

We are satisfied that the demurrers, so far as sustained by the
·chancellor, were well taken; and the·decree must be affirmed.

